Missouri Pacific Railroad Company *v.* Kirby.

Opinion delivered February 20, 1922.

1. Railroads—defective platform—instruction.—Where, in a personal injury action, plaintiff contended that he was hurt on defendant railroad's defective platform while delivering cotton for shipment, and there was no evidence that he was hurt on a gin platform, it was error to instruct that defendant was liable if the plaintiff was injured upon the gin platform, both because it was contrary to plaintiff's contention, and because there was no evidence that plaintiff was injured on the gin platform.

2. Railroads—custom to use platform—evidence.—The fact that a railroad received freight from one or two shippers on a cotton gin platform adjoining its freight platform does not prove a custom to receive freight thereon.

Appeal from Cross Circuit Court; *R. H. Dudley,* Judge; reversed.

*Thomas B. Pryor* and *Daggett & Daggett*, for appellant.

The instruction numbered 6, given by the court, was abstract and misleading. Its effect was to allow the jury to consider evidence insufficient to support a verdict. *Worthen* v. *Smith*, 149 Ark. 278. Proof that the company received cotton at the gin platform at some isolated and remote town is not sufficient to establish a custom. 17 Ark. 428; 58 *Id.* 125; 137 *Id.* 137. Evidence sufficient to establish a local custom must be clear and convincing, and show that it had existed long enough to have become generally known. 108 Ark. 437; 105 *Id.* 518.

Number 2 requested by appellant was intended to cover the failure of appellee to prove the custom, and to prevent the jury from finding for him, if they found the injury occurred on the gin platform. It was error to refuse this instruction. Proof that the injury occurred on the railroad platform raises no presumption of negligence. 20 R. C. L. § 52; 94 N. W. 64; (Ky.) Ann. Cases, 1915-D, 861. In view of appellee's positive testimony that the injury occurred on the railroad platform, there being no proof of negligent maintenance, the question of the exercise of reasonable care by the appellant was material; and if there was a defect in the platform which was not apparent, or discoverable by the exercise of ordinary care, the accident was unavoidable, and the appellant was not liable. This principle is recognized, inferentially, in these cases. 89 Ark. 122; 77 *Id.* 561.

*John W. Brawner* and *J. F. Gautney,* for appellee.

1. Appellant was required to keep its platform in reasonably safe condition, and it failed to exercise ordinary care in that respect, and injury resulted as a consequence thereof. It is liable to the party injured, if he was on the premises for the purpose of transacting business with the company, and was himself not guilty of contributory negligence. 22 R. C. L. 904; § 150; 100 Ark. 433; 96 *Id.* 311.

2.  Instruction 6 was justified by the evidence. It was sufficient to establish the fact that appellant used the gin platform for the purpose of receiving cotton for shipment, and that on this occasion appellee was acting under the direction the agent in placing the cotton. The obligation to exercise ordinary care extends to premises used by the railroad, though it may not be the owner thereof. 102 Ark.

It was not necessary for appellee to prove a custom. The railroad company had the right to select a place at which it would receive shipments,—and in this instance exercised it. 16 Am. Rep. 618; 80 Ky. 82.

WOOD, J. This is an action by the appellee against the appellant for damages for personal injuries. The appellee alleged that on the 19th of November, 1920, he delivered on the cotton platform of appellant in the town of Parkin, Arkansas, one bale of cotton which appellant's agent received and tagged; that thereafter such agent directed the appellee to move the cotton to another point on the platform, and, while undertaking to move the cotton as directed by the agent, a defective plant in the platform broke and caused the injury to the appellee to his damage in the sum of $1,800, for which he prayed judgment. The appellant, in its answer, denied all the material allegations of the complaint and alleged that, if the appellee was injured, his injury was due to his own negligence.

The appellee testified that on the evening of November 19, 1920, he went to Parkin for the purpose of shipping a bale of cotton. He got a dray to haul it and put it on the *railroad platform*. He put the tag on the bale of cotton and waited until the agent came. Appellee told the agent that he had a bale of cotton he wanted the agent to get out. The agent said, "All right," and got up on the platform, and sat down on the bale of cotton, and wrote out the bill of lading. He then said, "You will have to move this bale of cotton." Appellee then called upon two gentlemen who were near to assist him. There

was a box car standing on the north end of the switch at the north end of the platform ready for the cotton to be loaded. It was some sixty feet from where the cotton was to this car, and in rolling it they could not roll it flat-ways but had to "end it over and over." In doing so appellee was right behind the bale of cotton and stepped into a hole with his left foot, and that threw the bale of cotton back against him. It struck him in the left side, and appellee had been suffering every minute since. The agent did not assist the appellee and the men in moving the bale of cotton. When appellee stepped in the hole and the bale struck him in the side, it fractured some of his ribs and knocked the breath out of him for a minute or more.

Appellee then further describes his injuries, his suffering, and his treatment by his physician, which it is unnecessary to set forth. Appellee was asked the following question: "Q. You say that bale of cotton was on that railroad platform over there?" And answered, "If it wasn't put on the railroad platform, there never was one." A plat was exhibited to the appellee, and he described the direction that he and his assistants went over the platform in moving the bale of cotton and the place where he was hurt. He stated that he again examined the platform the first time he went back to Parkin after he was hurt, about ten days after. He had his rule with him and measured the hole and found that it was about 24 inches long and about six inches wide. He was asked, "Was that on the railroad platform?" and answered "Yes, sir." The agent never gave the appellee any bill of lading until after he got hurt.

On cross-examination the appellee, in answer to questions, stated that the railroad platform and the gin platform formed an "L" in there on the east side. He backed the dray into that "L." He then stated that the railroad platform ran north and south, and the gin platform ran east from the railroad platform. Appellee further stated that he supposed the railroad platform was 24 feet wide and 65 or 70 feet long. The appellee stated that

they couldn't roll the bale flat-ways because the platform was full of cotton—''had to roll it around and end it over.'' He was asked, ''Was there any cotton on the gin platform?'' and answered, ''Plenty of it.'' He stated that there was very little room for the cotton on the platform at the place he unloaded the bale. He again repeated that he knew it was on the railroad platform. He also said that they received cotton over both platforms. He didn't go around before moving the bale to see whether there were any boards or rotten planks in the platform or not. Appellee saw the hole that he fell through on the day of his injury, but didn't see it before he fell. It looked like a fresh break when his leg went through it. The appellee was asked if he did not tell Mr. Matheney that he got hurt on the gin platform and answered, ''No, sir, nor nobody else.'' He was asked if the railroad company maintained the gin platform and answered that he did not know about that, but they used it, and stated also that the gin company used it. He was again asked if he hadn't stated to Doctor Smith, in describing his injuries, that he got hurt on the gin platform of Head & Beaty and was going to make them pay for it, and answered, ''No, sir.''

The claim agent of appellant testified that he was acquainted with the railroad company's platform at Parkin where the injury is alleged to have occurred; that he went to that platform a short time after the alleged injury to examine it. He made a careful examination and stated that it was 22x60 feet. He found that it was comparatively new, and at the time he examined it comparatively full of cotton. It was floored with 2-inch lumber apparently sound. There was absolutely no break in the platform, and no evidence of any recent repairs and none yet. He had pictures made of the railroad company's platform and of the gin platform. The pictures, after proper identification, were submitted to the jury.

The station agent at Parkin testified that the railroad platform at the time of the alleged injury to the

appellee (November 19, 1920) was in good condition. They trucked over it and went over it with their feet, and that it was in good condition. He was asked about the condition of the other platform, and the attorney for the appellee objected to the question. The court overruled the objection, and the witness then stated that the gin platform was dangerous. It was full of holes— some of them large ones. He further stated that the only place that the railroad company received cotton for shipment was on the railroad platform—that was the invariable rule.

Dr. Smith testified that on the day that the appellee first called on him for treatment he stated that he got hurt on a cotton platform, but did not state which platform it was. On a subsequent day appellee stated to witness that he would have to call on witness again; that he expected to make Head & Beaty pay for it.

The drayman who hauled the bale of cotton for the appellee testified that he did not remember whether he put the bale on the railroad platform or the gin platform. He put it on the easiest place. He was hauling cotton to the depot for shipment. Both the railroad platform and the gin platform were crowded with cotton most of the time. His business brought him in touch with the platform practically every day. The railroad platform was in good condition in November, 1920. He did not see any holes in the railroad platform, and if there had been any he would have seen them. He was also acquainted with the gin platform. There were three or four holes in it.

Another witness at the instance of the appellant testified that he helped the appellee to the doctor's office on the day he is alleged to have been injured. The appellee stated to this witness that he unloaded his bale of cotton on the railroad platform. About ten days after that the appellee took witness back to the platform and showed witness where he was hurt. There was a hole about 18 inches long and five or six inches wide. The hole was in the railroad platform (that was the first day

of December, 1920). This witness further testified that he thought the appellant received cotton on both platforms. A statement made to the railway claim agent by this witness was identified and introduced, and in that statement witness stated that the appellee told him he got hurt at the gin platform of Head & Beaty, but as witness understood it the railroad company owned or controlled part of that platform.

A witness who was a merchant testified that he shipped cotton all last fall. He didn't know whether the appellant had a rule there that they would receive cotton only on the railroad platform. He more than likely shipped cotton from the gin platform. They were tagging it there. The agent does the loading.

The appellant among others asked the court to instruct the jury to the effect that it was the duty of appellant to exercise ordinary care to keep in a reasonably safe condition all portions of its platforms on which it received freight for shipment; but, before the jury could find for the plaintiff, it must find from a fair preponderance of the evidence that plaintiff was on the premises of the defendant for the purpose of delivering freight for shipment at the time the alleged injury occurred, and that the defect in the platform which caused the injury was apparent to, or by the exercise of ordinary care the defects in the platform could have been discovered by, the defendant. The court refused this prayer, to which the appellant duly excepted.

At the instance of the appellee the court gave among others the following instructions: "No. 6. Even though the injury, if any, received by plaintiff was upon the gin platform, still, if you find from the evidence the defendant company used the gin platform and received cotton for shipment upon the gin platform and received plaintiff's cotton there, and if you further find from the evidence that plaintiff was injured while rolling the bale of cotton, under the directions of defendant's agent,

to another place on said platform, and while in the exercise of due care upon his part, you will find for the plaintiff.''

The appellant objected to the giving of the instruction on the specific ground that there was no evidence to show that the defendant received the cotton from the plaintiff on the gin platform, and because, even though there is evidence of the receipt of cotton from others on said platform for the purpose of shipment, such evidence did not bind defendant to maintain and keep the platform in repair for the plaintiff who took his cotton to the railroad platform. The court overruled the objection, to which ruling appellee duly excepted.

The jury returned a verdict in favor of the appellee in the sum of $666. Judgment was entered in his favor for that amount, from which is this appeal.

The court erred in giving on its own motion instruction No. 6. It will be observed from the appellee's own testimony and the testimony adduced in his behalf that he was contending that his injury occurred on what he designated the railroad platform. Appellee, in answer to specific questions intended to elicit from him whether or not his injury occurred on the railroad platform or the gin platform, answered emphatically two or three times that his injury occurred on the railroad platform, and not the gin platform. It was the contention of the appellant in the first place that the appellee was not injured at all, and, if injured, that his injury was caused on the gin platform, and not on the railroad platform; that the appellant did not receive cotton for shipment on the gin platform.

These were the issues sharply drawn by the testimony adduced by the respective parties. Instruction No. 6, given at the instance of the appellee, enabled the appellee at the last moment to shift the issue and to contend that the appellant was liable, even though the appellee received his injury on the gin platform and not on the railroad platform. The court should not have permitted

the recovery to be had by the appellee on this theory. It was contrary to his own evidence and contention and was unfair to the appellant. The appellant, as shown by the testimony adduced by it and its prayers for instructions, was counteracting the theory of the appellee that the injury occurred on the railroad platform; and if it had been advised before the testimony was closed that the appellee was going to shift the issue to the gin platform, it might have desired further evidence, and to direct its proof to the new issue as to whether or not the injury occurred on the gin platform instead of the railroad platform. At least, if the appellant had been advised, in advance of the instruction given, that the appellee intended to insist that the injury occurred on the gin platform, the appellant would have had the right to ask for a postponement or a continuance of the cause to prepare for and meet this issue. Furthermore, the appellant is correct in its contention that the instruction was abstract. There was no testimony to prove that appellant had leased the gin platform for its use in receiving and shipping cotton, and the testimony is not sufficient to show a use by custom that would bind appellant. The fact that appellant received cotton from one or two individuals for shipment from the gin platform would not prove its use of same by custom. *Burr* v. *Sickles,* 17 Ark. 428; *Jones* v. *Malvern Lbr. Co.,* 58 Ark. 125; *Beal-Burrow Dry Goods Co.* v. *Levy,* 137 Ark. 137.

Instruction No. 6 given by the trial court was therefore erroneous and prejudicial to the appellant. Appellant made specific objection to the instruction, and the court therefore erred in overruling such objection and in granting appellee's prayer for this instruction. For this error the judgment must be reversed and the cause remanded for a new trial.