St. Louis-San Francisco Ry. Co. *v.* Hill, Guardian.

4-5245                                        121 S. W. 2d 869

Opinion delivered November 14, 1938.

54

J. W. Jamison, E. L. Westbrooke, Jr., and E. L. West-brooke, for appellant.

E. E. Alexander, Harrison, Smith & Taylor, for appellee.

MEHAFFY, J. Complaint was filed in the Mississippi circuit court by the appellee against the appellants for damages for injury to A. C. Houston, incompetent. It was alleged that Houston was knocked to the ground, head, face, body and limbs broken, bruised and lacerated and skull fractured, requiring a serious operation; that large sums of money had been expended for medical and

hospital attention, nurses, etc.; that he suffered great pain and anguish, and that he is totally incapacitated. It was alleged that the persons operating the train failed to keep a proper lookout for persons and property on or near the track; failed to blow the whistle or ring the bell or give other warning of the approach of the train, and that the train was operated at an excessive rate of speed; that there was failure to exercise ordinary care to discover the peril of Houston, and failure to exercise ordinary care to avoid injuring him after his peril was, or should have been, discovered.

Appellants answered denying all the material allegations in the complaint and pleading contributory negligence of Houston.

There was a trial, verdict and judgment for the appellee in the sum of $3,000. The case is here on appeal.

Parvin McDearman testified that he was standing about 300 feet from the crossing, and that the train passed about one o'clock at night; when it left the depot it whistled the highball whistle, a couple of shorts; it did not whistle any more until it was stopping; it had crossed the crossing; never noticed the bell ringing; Houston had come into the Sternberg gin where witness was working wanting work, but witness would not let him work because he had an infection in one hand; it was around 11:30 when Houston came to the gin; Houston left with a boy, Joe Waldrup, about 12 o'clock going south; witness then went over to a restaurant and saw Houston there eating a hamburger and drinking a Coca-Cola; saw him after the train passed on the side of the railroad gasping for breath and unconscious; witness saw something coming down the track that looked like a shadow, and it looked like something grabbed him on the side of the train, and the train sucked him into it; he was close to it; he knew what he saw was a man by the train stopping; the train stopped about 200 or 220 feet with the rear end of the train that distance from the crossing, and there is where he found Houston; there were flood lights on the gin, scales and office; several

trucks around there bringing cotton to be ginned; the crossing has been there ever since witness can remember and been used as a public crossing; Houston was found on the west side of the track; some of the train crew went back to where Houston was and the train stayed there about 20 minutes; Houston's head was at the end of the tie lying on his right shoulder; he was awfully close to the rail headed north when witness saw him; when witness first saw him it was something like 40 or 50 feet down the track; when it was struck it was even with the crossing signboard, four or five feet south of the crossing; the depot was about a quarter of a mile from where witness was standing; train stopped at the station ten or fifteen minutes.

Joe Waldrup testified that he saw Houston between 12 and 12:30 at the gin; he and Houston separated, he went one way and Houston the other.

Mrs. McDearman testified about Houston coming to the restaurant between 12 and 12:30.

R. L. Hill testified that he saw Houston and when Houston left he went towards the railroad; that he was looking at him when the train hit him; there was nothing else there to hit him; when Houston left witness he went straight out to the railroad; he heard a couple of short whistles after the train crossed the crossing; if it whistled before it hit Houston witness did not hear it; the bell was not ringing; the track is straight a good piece south of the depot to the north of the gin; no obstructions to keep those in the engine cab from seeing down the track; does not know whether he got hit at or below the crossing.

McDearman also testified that there was nothing to keep the engine men from seeing Houston if they had been keeping a lookout; they did not slow up or show any sign of stopping before they hit him; Houston was not moved from where he was lying until the ambulance came.

R. L. Hill testified, also, that he supposed he was struck by the engine, but did not know; it was dashed

in there in a moment and struck him; does not know whether Houston walked right into the train; he was right at the crossing or south of it.

The engineer and fireman testified that they were keeping a constant lookout and saw no one on the track; but that the fireman informed the engineer that a man was lying by the side of the track and the engineer immediately applied the brakes and stopped; stopped the train as quickly as he could and walked back and saw the man lying there; engineer inspected his engine and the side of the train and found nothing to indicate that the man had been struck; Houston was 15 or 20 feet south of the crossing; the headlight was sufficient for them to see 1,000 or 1,200 feet ahead. The conductor testified that he could not hear the bell or whistle because cars are air-condition and air-tight; when the train stopped, conductor got off and met the engineer, who told him they had run over somebody or something; made no inspection of the train.

The car inspector at Hayti, Missouri, testified that he made an inspection of the train; looked the train over, inspected the cab and found no blood or hair on any part of it or anything to indicate that a man had been struck.

J. I. Stovall testified that he found Houston with a wound in the back of his head, lying on the west side of the track about eight steps south of Kentucky street crossing.

At the close of the evidence the appellants asked for an instructed verdict, which the court refused to give.

Appellants first contend that there is no dispute that the lookout required by the statute was kept. No witness testified, of course, that a lookout was not kept; but the evidence shows that Houston walked onto the right-of-way; that persons on the engine could see from 1,000 to 1,200 feet down the track, and that Houston was walking there when the train came, and after the train passed he was found lying about 18 inches from the rail, injured as described by the witnesses. There was nothing else that could have struck him. In addition to this, Hill testified that he saw the train strike him.

If the jury believed the witnesses for appellees, they were bound to reach the conclusion that Houston walked onto the right-of-way and track, and that if the engineer and fireman had been keeping a lookout, they could have seen him.

Appellee's witnesses testify to facts contradicting the evidence of the engineer and fireman. The jury had a right to believe these witnesses. It was the province of the jury to pass on the credibility of the witnesses and the weight to be given their testimony. The engineer and fireman admit that they could see ahead from 1,000 to 1,200 feet; they had a headlight in good condition, and it is common knowledge that one can see, not only on the track immediately ahead of the train, but for some distance on the right-of-way on each side of the track.

Appellants, however, say that prejudice to the defendants arises from the different operation of the two principles of law. If killed under certain circumstances, contributory negligence would not be a defense; under other circumstances, it would be a defense, and it would be the duty of the jury to reduce the amount of damages. But no prejudice could arise because of this. If the jury believed that the appellants discovered Houston's peril, or by the exercise of ordinary care could have discovered it, contributory negligence would be no defense. But if the jury believed that Houston was injured as a result of appellants failing to give the statutory signals, and find that Houston was also guilty of negligence, this negligence of his would not bar his recovery, but it would be the duty of the jury to diminish the damages in proportion to such contributory negligence. Certainly there is no conflict and no necessary confusion about these two principles. The evidence justified the submission of each question to the jury. The suit was brought for $3,000, and the jury returned a verdict for that amount. Houston's injuries were sufficient in extent to sustain a much larger sum.

No abstract instructions were given by the court. Appellant calls attention to *Kimbrough* v. *Johnson,* 182

Ark. 522, 32 S. W. 2d 154. The court in discussing the instruction in that case said: "We do not think under appellee's own testimony that this issue should have been submitted to the jury."

In this connection appellants, also, call attention to the case of M. P. Rd. Co. v. Kirby, 152 Ark. 90, 237 S. W. 687. It is true that the court reversed the judgment in that case. There is, however, nothing in that case that sustains the argument of appellants in this case.

It is argued, however, by appellants that there are three theories; two opposing theories by plaintiff's witnesses. We do not agree with appellants in this contention. It is true that there was a conflict in the testimony of the witnesses as to which direction Houston was traveling, but it was the duty of the jury to consider all the evidence and determine from that what caused the injury. It is argued that the cause of the injury is unknown. This argument overlooks the positive evidence of Hill, who said he saw the train strike him, and the fact that he was found immediately after the train passed with his skull crushed, and there is no speculation about these facts.

Appellants requested the court to instruct the jury in effect that if Houston left the gin premises and walked in the direction of the crossing at the gin, turned south on the track and was injured by a northbound train with the headlight brightly burning, Houston was guilty of negligence of an equal degree with the negligence of the railroad company. It was not the province of the court to pass on the evidence and determine the degree of negligence of each, but it was the province of the jury.

The next instruction that the court refused was to the effect that if Houston was injured south of the crossing, the railroad company owed him no duty except not to willfully and wantonly injured him after discovering his peril. This instruction ignores the law that it is their duty to keep a lookout in order to discover persons and property on the track.

The objection to instruction No. 1 given by the court is that it fails to take into account the testimony of the

witnesses that Houston was a trespasser. The instruction, in fact, tells the jury that if he was injured at a public crossing at a time when he himself was in the exercise of due care, he would have a right to recover. Of course, if he was at a public crossing he would not be a trespasser, and there was no error in giving this instruction.

There are some other objections made by appellants to instructions given and refused, but after a careful examination of all the instructions we have reached the conclusion that there was no error committed by the court in giving or refusing to give instructions.

Appellants complain because they say that instructions 2, 3, 6 and 7 are abstract. Instructions 3 and 7 objected to were not mentioned in appellants' motion for a new trial.

Appellants call attention to the case of *St. L.-S. F. Ry. Co.* v. *Pace,* 193 Ark. 484, 101 S. W. 2d 447. There was no evidence in that case that he was hit by the train.

Appellants call attention to a number of cases which we do not discuss separately, but attention has been called to no case where there was substantial evidence that the train struck the injured party. There is that evidence in this case. Hill testified positively to seeing the train strike Houston.

"It may be said to be the general rule that where an unimpeached witness testifies distinctly and positively to a fact and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established." *Castile* v. *Yantis-Harper Tire Co.,* 183 Ark. 475, 36 S. W. 2d 406; *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764, 118 Am. St. Rep. 52, 12 Ann. Cas. 243.

In the instant case there is not only no circumstance from which an inference against the testimony of Hill can be drawn, but there is the evidence of several witnesses that he walked to the railroad from the gin, and the circumstance that he was found with his skull

crushed, and there is no other way shown by which this could have been done, except being struck by the train.

If the jury had believed appellants' witnesses; they would necessarily have found for appellants, because the engineer and fireman testified that they were keeping a constant lookout, and had a good headlight and saw no one ahead on or near the track. However, this evidence, as we have said, is contradicted by not only the evidence of Hill and other witnesses, but by all the circumstances in the case, and it is the province of the jury to pass on the credibility of witnesses and weight of their testimony, and when they have done this and reached a verdict, this court has no right to set such verdict aside if it is sustained by substantial evidence. It cannot be said that the evidence of appellee's witnesses is not substantial.

The judgment is affirmed.

SMITH, BAKER and DONHAM, JJ., dissent.