Kansas City Southern Railway Co. *v.* Mickel.

4-7438 183 S. W. 2d 45

Opinion delivered November 6, 1944.

*Joseph R. Brown,* for appellant.

*Wesley Howard* and *E. K. Edwards,* for appellee.

Knox, J. This action results from a collision between a railroad train and a motor truck loaded with lumber, which collision occurred at Stillwell Avenue crossing in the city of DeQueen, about 11 a.m., June 22, 1943. Appellee, Melvin Mickel, the driver of the truck, instituted action against appellant, The Kansas City Southern Railway Company, to recover damages for personal injury allegedly sustained by him, and he and his mortgagee, Horatio State Bank, instituted action to recover alleged damage to the truck. Trial resulted in verdicts against appellant, awarding appellees Mickel and the bank $500 as damage to the truck, and Mickel $250 on account of personal injury. Judgments were entered in accordance with the verdicts, and appellant railway company prosecutes this appeal, urging as the sole ground for reversal lack of evidence of negligence on its part, resulting in or contributing to the accident. Appellant contends that because of appellees' failure to refer to any evidence in

the record tending to support any allegation of negligence on the part of appellant they impliedly, at least, conceded that proof of negligence by appellant, its servants and employees is lacking, and that appellees are forced to rely for recovery upon failure by appellant to show that it discharged the duty imposed on it under the lookout statute.

Appellees argue that since the burden of proof is placed on appellant by § 11144 of Pope's Digest to show that all persons running the train maintained a proper lookout and that since it failed to discharge such burden the trial court correctly refused appellant's request for a directed verdict, and the judgments should be affirmed.

Appellees' contention rests upon the testimony of engineer Dunnegan, who testified that the train involved in the collision was a passenger train composed of seven passenger coaches and two baggage coaches; that the power used to propel the train was supplied by "two Diesel engines" (connected) "back to back" that he (Dunnegan) "was operating the engine in the control room . . ." Appellees argue that the fact that the train was being propelled by two engines of necessity suggests that two engine crews were actually engaged in running the train, and that since only one engine crew (Dunnegan and his fireman) testified that they were keeping a proper lookout, and that no member of the engine crew on the other engine testified appellant failed to discharge the burden of showing that all persons running the train were keeping a proper lookout.

It is true the engineer (Dunnegan) testified that the train was being propelled by "two Diesel engines," which suggests the idea of two crews, and had there been two steam locomotives operated together in the fashion frequently referred to as a "double header" there doubtless would have been two engine crews engaged in running the train. Here, however, the train was being propelled not by two steam locomotives but by two Diesel engines, and the engineer testified "I was operating the engine in the control room." Diesel engines are new, and both this and the trial court doubtless would have derived

benefit from a more complete explanation of how such engines are controlled. It is true that engineer Dunnegan made use of the singular and referred to the "engine," implying that he was operating only one of the two engines which supplied the locomotive power, but when we examine his complete statement—"I was operating the engine in the control room," we are convinced that notwithstanding the fact that he used the word "engine," he was referring to the entire power plant, which on that morning consisted of two units, referred to by him as an engine. He was in effect testifying that he was able to and did control this power plant (both engines) from the control room. With no other evidence in the record, the jury would have been justified in drawing such an inference from the testimony, and without other testimony on the question it must be admitted that appellant discharged the burden of proof showing that its agents maintained a proper lookout in view of the fact that engineer Dunnegan and his fireman had each testified without contradiction that they had kept a constant lookout.

Other acts of negligence are alleged, but the record fails to disclose evidence which would sustain any of them. Appellees in their brief call our attention to no fact reflected by the record which apparently required submission of this case to the jury other than the supposed failure by appellant to discharge the burden of proof to show that a proper lookout was kept. We have heretofore fully discussed this question, and find no merit in appellees' contention.

In the case of *St. L.-San Francisco Ry. Co.* v. *Williams,* 180 Ark. 413, 21 S. W. 2d 611, it was held that where an engineer testified he kept a constant lookout, and there was no testimony to the contrary, the burden of proof imposed by the statute against the railroad company was thereby discharged. Such rule is controlling in the case at bar. Both engineer Dunnegan and his fireman testified that they maintained a constant lookout. Their testimony, or the testimony of engineer Dunnegan alone, uncontradicted, was sufficient to discharge the

burden with respect to proof imposed by the statute. Furthermore, the evidence shows that both the truck and the train were moving very slowly, about 12 or 15 miles per hour. The truck had shifted into second gear about 150 feet from the track. The owner and driver of the truck crossed at the same crossing one or more times each day. The engine crew saw him when he was some distance from the track, approaching the crossing very slowly. They assumed, as they had a right to do, that he would stop before placing himself and truck in a position of danger. *Crossett Lbr. Co.* v. *Carter,* 201 Ark. 432, 144 S. W. 2d 1074; *Mo. Pac. R. Co.* v. *Lemons,* 198 Ark. 1, 27 S. W. 2d 120; *Mo. Pac. R. Co.* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785.

We are convinced that the trial court should have directed a verdict in favor of appellant, and for its error in failing so to do the judgment is reversed and the cause dismissed.