The judgment of the District Court is Affirmed.

## ST. LOUIS–SAN FRANCISCO RY. CO. v. WILLINGHAM.

No. 13951.

United States Court of Appeals Eighth Circuit.

Oct. 26, 1949.

168

E. G. Nahler, St. Louis, Mo., and E. L. Westbrooke, Jr., Jonesboro, Ark., submitted brief for appellant.

Frank Sloan Jonesboro, Ark., submitted brief for appellee.

Before WOODROUGH, THOMAS and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

The appellee Willingham, a farmer, while walking with his wife toward the west along the tracks of the appellant Railway Company in Arkansas was struck by one of appellant's trains and injured. He brought this action for damages against appellant, alleging that his injury was the proximate result of the negligence of appellant, (a) in failing to give the statutory warning signals for a crossing about one-half mile east of the place where the accident occurred; (b) in failing to keep a lookout for persons upon the tracks as required by statute; and (c) in failing, after discovering the peril of appellee, to exercise ordinary care for his safety by sounding warning signals by whistle and bell or by slowing or stopping the train to give him time to leave the tracks in safety.

The case was tried to a jury; and on the charge of negligent failure to give the statutory warning signals the court instructed the jury "that the plaintiff Willingham was a trespasser on the track of the defendant", and "that the railway company is not required to give the statutory signals by whistle or bell required for the protection of travelers at crossings to a trespasser upon its tracks." No exception was taken to this instruction. The court submitted the case to the jury on appellee's charges of negligence (b) and (c), supra. A verdict was returned for appellee in the amount of $3,500, and the Railway Company appeals.

The appellant seeks reversal of the judgment against it here on the grounds:

1. That the court erred in overruling its motion for a directed verdict in that there is no substantial evidence to support a verdict for appellee (a) based on failure of appellant to keep a constant lookout or (b) on failure to use due care for the safety of appellee after discovering his peril; and

2. That the court erred in modifying appellant's requested instruction No. 3.

The evidence is in conflict only upon the question whether appellant's engineer discovered appellee's perilous position between the rails in time to have averted the accident had he exercised ordinary care. But

three witnesses were called to testify, the appellee and his wife on appellee's behalf and one Hamby, the engineer on the train, on behalf of appellant.

The appellant operates a railway connecting the cities of Jonesboro and Blytheville, Arkansas, over which it runs a Diesel-powered passenger train called "The Moose" daily between these cities. The appellee and his wife live on and operate a farm lying on the north side of the railway about five miles east of the town of Nettleton, Arkansas. A public highway runs south on the east side of their farm crossing the railroad tracks about a quarter of a mile from their house at a point called Webb's Mill Crossing.

The appellee and his wife testified that on and prior to May 27, 1946, water was standing on and covering their field adjoining the railway right of way on the north; and that on that day they left their house together about 15 minutes after 1 o'clock in the afternoon and walked south on the highway to Webb's Mill crossing. It was a clear day. The railroad tracks at that point run in a straight line east and west. When they arrived at the crossing they stopped and looked but saw no train approaching. They could see the tracks for a distance of about two miles in each direction. They then turned west and walked along between the rails. Appellee was carrying some fishing poles for a boy who lived with him. Their object was to find a convenient place to construct an opening under the tracks to drain the water off the field.

Appellee and his wife knew that the train called The Moose usually passed their place traveling west about that time of day, but they thought it had gone. After they had proceeded westward about one-half mile from the crossing without looking back toward the east Mrs. Willingham heard "kinda roaring, swishing noise." She then looked back, saw the approaching train and exclaimed "Lord-a-mercy, there comes that Moose!" Appellee turned and saw the train approaching at a distance of about 150 feet and at an estimated speed of 40 to 45 miles an hour. It was then about 2 o'clock. The train had sounded neither a warning bell nor whistle. Both witnesses for appellee testified that at the time the approaching train was discovered by them they were walking between the rails, appellee being on the north side of his wife. Upon seeing the train she jumped off on the south side of the track. Appellee threw down the fishing poles which he was carrying and attempted to get round and pass his wife on the south side of the track, and as he did so the front part of the engine struck him causing the injuries of which he complains.

Harry Hamby, the only witness for appellant, testified that he was the engineer on the train on May 27, 1946, when appellee claimed that he was struck by the Moose; and that he had a little better than 38 years' experience as a locomotive engineer. The Moose consisted of a gas-electric car, on which he was in the extreme right hand front end, and back of the motor car was a combination baggage and mail car. The train consisted of the two cars only.

Hamby testified further that at 12:15 on May 27, 1946, the train left Blytheville on the trip west to Jonesboro and got along by appellee's farm about 2 o'clock p. m. At Webb's Mill crossing the track is straight on both sides of the crossing for about eight miles. He had made the trip twice a day since 1939. He sounded both the whistle and the bell for the crossing as he approached it. After passing the crossing he noticed a man and a woman walking west on the south side of the track. The man had some poles on his shoulder. They turned and looked north; the man took the poles from his shoulder and laid them down in front of him between him and the track. At that time the man and the woman were 800 or 1,000 feet away. There was nothing to obstruct his vision. From his position Hamby could see everything in front of the motor car until the object was within about 20 feet, after which the motor cut off the view. As he approached Webb's Mill crossing the train, he thought, was running 35 to 40 miles an hour. The weather was clear, and he could see the man and the woman distinctly. Had he thought they were in

any danger he could have stopped. He did not sound the bell or the whistle and he did not stop or slow down the train because the man and woman were standing south of the track some 10 or 12 feet. They were not in any danger at any time. The track being dry, he could have stopped the train in from 400 to 500 feet when going 40 miles an hour.

The complaint is in one count. Damages were demanded for a single injury caused by appellant's train striking appellee. The right of recovery was based upon the alleged negligence of appellant. Two grounds of negligence were submitted to the jury: (a) the failure of appellant to keep a lookout for persons upon the track and (b) failure of appellant after discovering appellee's perilous position on the track to use the means within its control to prevent the injury. A finding of negligence of the second type implies that appellant was not negligent in failing to keep a lookout. It is apparent from the record here that the verdict of the jury is based upon the doctrine of discovered peril, as it is called in Arkansas, and not upon failure to keep a lookout. The engineer testified that he did keep a constant lookout and that he saw the appellee in time to have stopped the train before the collision had he not believed that appellee was in a safe place. His testimony that he did keep a lookout is not disputed; and, therefore, under the law of Arkansas it was sufficient to discharge the burden cast upon appellant upon that issue. Kansas City Southern Ry. Co. v. Mickel, 207 Ark. 872, 183 S.W.2d 45.

On the issue of discovered peril the court instructed the jury: " * * * if you find from the evidence in this case, that the operator of such train did keep a constant lookout and did discover the presence of plaintiff upon the tracks or dangerously near to the tracks in a perilous position in time to have avoided injuring him by the exercise of ordinary care for his safety, and you further find that, after discovering plaintiff in a perilous position, such operator or engineer failed to use the means within his control in the exercise of ordinary care to prevent injury to the plaintiff, either by giving warning signals by whistle or bell or by slowing or stopping the train in order to give plaintiff sufficient time to leave his perilous position after becoming aware of the approach of the train, if you find that such failure, if any, was negligence under the circumstances then and there existing, proximately resulting in injuries to the plaintiff, then you should return a verdict for the plaintiff, even though you may believe from the evidence that plaintiff was a trespasser or was negligent in going upon the track."

The instruction is consistent with Arkansas law, Pope's Digest of the Statutes of Arkansas, § 11144; and no objection or exception was taken to it by either party. The only question for consideration on this charge of negligence, therefore, is whether there is substantial evidence to sustain the verdict based on a finding that engineer Hamby did discover appellee in a perilous position upon the tracks in time to have avoided injuring him by using the means within his control, either by giving warning signals or by slowing and stopping the train. In determining this question on appeal we must view the testimony in light most favorable to the appellee. Missouri Pac. R. Co. v. Thomas, 197 Ark. 565, 124 S.W.2d 820; St. Louis-San Francisco Ry. Co. v. Hill, 197 Ark. 53, 121 S.W.2d 869; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 115 F.2d 369. Applying this rule it cannot be said that the court erred in submitting the case to the jury or that there is not substantial evidence to support the verdict. The engineer testified that he saw appellee in time to have slowed or stopped the train before he arrived at the place where appellee was struck and that he neither sounded the warning signals with bell or whistle nor attempted to slow the train. The only substantial difference between his testimony and that of appellee and his wife is that Hamby testified that they were walking south of the track and that they were 10 or 12 feet from the track when they passed out of his view 20 feet in front of the engine, while both the appellee and his wife testified that they were walking between the rails and did not hear the approaching train until it was too late to avoid injury.

In the Hill case, supra, both the engineer and fireman testified that they were keeping a lookout and saw no one on the track ahead; but the fireman told the engineer that a man was lying by the side of the track and the engineer immediately stopped the train. Other witnesses testified that the persons on the engine could see 1,000 to 1,200 feet down the track and that Houston, the injured man, was walking there when the train came, and that after it passed he was lying by the side of the track injured. The court said that the testimony of the engineer and the fireman was contradicted by the testimony of other witnesses, "and it is the province of the jury to pass on the credibility of witnesses and weight of their testimony * * *" Here appellee and his wife testified that they were walking between the tracks and the engineer testified they were walking south of the tracks.

The evidence is conflicting, and, as in the Hill case, it was the province of the jury to resolve the conflict and determine the fact in dispute. The cases cited by appellant are not inconsistent with our conclusion upon this point.

■ ■ ■ Appellant's second point is that the court erred in modifying its requested instruction No. 3. We have considered the statements and the authorities cited in support of this contention in appellant's brief, and we conclude that it is without merit. We refrain from discussing the contention here, however, because we find no requests for instructions in the record and no objections to the instructions given. In this situation Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. precludes appellant from assigning "as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Compare O'Connell v. Naess, 2 Cir., 176 F. 2d 138, 140. A record should clearly disclose the basis of an appeal showing the ruling of the court complained of and that the appellant complied with the Rules of Civil Procedure.

Affirmed.