Missouri Pacific Railroad Company, Thompson, Trustee, *v.* Johnson.

4-6769　　　　　　　　　　　　　　164 S. W. 2d 425

Opinion delivered June 22, 1942.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*Horace Sloan, Frank Sloan* and *S. L. Richardson,* for appellee.

Holt, J. Appellees (plaintiffs below) joined in a suit against appellant to compensate personal injuries alleged to have been received by them when an automobile in which they were riding was struck on a crossing by one of appellant's passenger trains. The allegations of negligence are (a) failure of the operatives of the train to give the statutory signals; (b) failure to keep a lookout and the failure to keep a flagman at the crossing in question; (c) operating the train at an excessive rate of speed; and (d) failure of those in charge of the train after they discovered, or by the exercise of ordinary care could have discovered, the perilous situation of appellees, to avoid injuring them.

Appellant answered with a general denial and in addition pleaded the contributory negligence of appellees and of E. M. Johnson, driver of the car in which appellees were riding.

A jury returned a verdict in favor of Ester Johnson in the amount of $2,000 and a verdict for Belle Thorn in the amount of $500. From the judgment on these verdicts comes this appeal.

The principal contention of appellant for reversal is that the evidence was not sufficient to support the verdicts. The testimony viewed in its most favorable light to appellees is to the following effect:

February 1, 1941, at about 3:20 in the afternoon, E. M. Johnson, husband of Ester Johnson and son-in-law of Mrs. Belle Thorn, drove his 1931 Model A Ford Tudor Sedan on paved highway No. 67 south between Walnut Ridge and Hoxie to a point where this highway is intersected at right angles by Georgia street, where he stopped his car because the highway immediately ahead was blocked by freight cars being switched by appellant's switch engine on a switch track which crossed highway No. 67 and lead to a cotton compress to the west. After

waiting two or three minutes, Johnson, the driver of the car, turned off the highway to his left and at a speed estimated by himself at twelve to fifteen miles per hour, and by another witness from six to eight miles an hour, drove east on Georgia street, and at a distance of 48 feet from the highway passed over the compress switch track, and 21 feet farther on passed over the west main track of appellant and without stopping proceeded about 10 feet onto the east main track of appellant where appellant's passenger train from the north, traveling about 50 miles per hour, and running late, struck the rear of the automobile in which appellees were riding, and as a result they were injured.

From a plat in evidence, giving various measurements, the compress switch track referred to above, curves to the west from the west main track 150 feet from the Georgia street crossing. The east main track and the west main track are eight feet apart.

As appellees approached the east main track where the collision occurred, their view, as well as that of the driver, E. M. Johnson, was obstructed to the north by some freight cars standing on the west main track just to their left, and north of Georgia street. There is evidence that the nearest of these freight cars was within 20 feet of Georgia street. On this point the evidence is conflicting, some witnesses placing the nearest car at a much greater distance to the north.

Whether the statutory signals were given is a disputed question of fact. It is undisputed that the driver of the automobile did not stop from the time he left the concrete highway until he drove upon the east main crossing and was struck by the on-coming train.

E. M. Johnson testified that he looked both to the south and the north and listened, but did not see or hear the train that struck his car. He testified that he could not see the train approaching from the north because his vision was obstructed by the standing freight cars immediately to his left on the west main track.

Appellees, who were guests in the Johnson car, testified that they looked and listened, but did not see or hear the train and that their vision to the north was likewise obstructed. They also testified that they relied upon Mr. Johnson, the driver, and were not giving any particular attention at the time. Mrs. Thorn (65 years of age) testified that she had never driven an automobile and did not try to tell the driver what to do or what not to do. Both appellees and the driver, Johnson, testified that they did not hear any whistle or bell or any signals given.

Ester Johnson further testified that just before the collision she saw Jim Haddock drive his wagon over the crossing in question.

It is conceded here that the appellees were guests in Johnson's car. He was the owner and the driver. The rule is well settled that in these circumstances the driver's negligence cannot be imputed to the appellees unless they failed to exercise ordinary care for their own safety.

Whether these appellees, in the circumstances here, failed to use ordinary care for their own safety, and the degree of their contributory negligence, if any, were questions for the jury. As this court said in *Missouri Pacific Rd. Co.* v. *Powell,* 196 Ark. 834, 120 S. W. 2d 349, wherein the occupants of the automobile, and not the driver, were plaintiffs: ''There is little evidence that these several plaintiffs might have done anything more than they did as the crossing was approached, but if there were anything they should have done, and did not do which made them guilty of contributory negligence, that was a jury question. It was not a matter of law.''

And in *Missouri Pacific Railroad Company* v. *Henderson,* 194 Ark. 884, 110 S. W. 2d 516, this court said: ''The appellees, Henderson and Stanfill were invited guests, they had no control over the movement of the automobile in which they were riding, and Ingram's negligence, however gross, cannot be imputed to them. Therefore, we must look to the evidence only as it relates to their failure to exercise ordinary care for their

own safety. It is admitted that no one could see to the south of the crossing until a point was reached not more than 45 feet from the edge of the west track. . . . Suffice it to say that under all the circumstances, a case was presented for the jury both as to the negligence of the appellees and its degree, and we cannot say as a matter of law that their negligence equaled that of the appellant. Primarily, it was Ingram's duty to operate the car so as not to endanger appellees and, in the exercise of ordinary care, they had the right to rely on the assumption that he would perform this duty. It cannot be said that ordinary care would require the exercise of the same attention to the route on their part as was required of Ingram; in fact, it would not be unreasonable to say that passengers in an automobile trust largely, if not wholly, to the skill and care of the driver for their safety.''

The question of the degree of the negligence of appellees was for the jury and we are unable to say on the testimony as reflected by this record that their negligence was equal to that of appellant.

Appellant, especially in oral argument before this court, strongly relied upon the recent case of *Missouri Pacific Rd. Co.* v. *Howard,* ms. op. May 11, 1942, p. 868, 161 S. W. 2d 759, as controlling the rights of appellees here and insists that under the rule there announced appellees are not entitled to recover. We cannot agree that that case controls here. A different situation, however, would present itself if, on the evidence before us, appellant were appealing from a judgment in favor of E. M. Johnson, the driver of the car. In such case we think the principles of law announced in the Howard case on the question of negligence of the driver of the car would apply.

Appellant also assigns as error the giving of certain instructions by the court, and its refusal to give others requested by appellant. We have carefully examined these instructions and have reached the conclusion that

no error appears, and that the trial court fully and fairly covered all issues presented.

On the whole case, finding no error, the judgment is affirmed.