St. Louis-San Francisco Railway Company *v.* Beasley.

4-7026                                          170 S. W. 2d 667

Opinion delivered April 19, 1943.

*E. G. Nahler, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*Bruce Ivy, Myron T. Nailling, W. H. Fisher* and *Wils Davis,* for appellee.

McHaney, J.   Three separate actions were brought by appellees against appellants, who are the  St. Louis-

San Francisco Railway Company and its trustees, in two of which appellee, T. R. Willett was a defendant, to recover damages for personal injuries sustained by two of them and for the death of four of them, caused by a collision at a crossing between a truck in which they were riding and a fast passenger train of appellants, on September 22, 1941. One of such actions was brought by appellees, Fred Beasley and his wife, Louise Beasley, for personal injuries to Mrs. Beasley, and for the death of his three children, in which Willett was a defendant with appellants. Another was by Roy Beal as administrator of the estate of his wife, Ollie D. Beal, who was killed, to recover for her conscious pain, for the benefit of her estate, her heirs at law and next of kin and for himself as her husband. Willett and appellants were defendants in this action. T. R. Willett, owner and operator of the truck, brought suit against appellants for personal injuries suffered by him.

The negligence alleged and relied on in each complaint was, as to appellants, failure to give the statutory signals, to keep a constant lookout and discovered peril under the lookout statute, § 11144 of Pope's Digest. As to Willett, in the two suits in which he was a defendant, negligence was alleged in certain respects, but as the verdict and judgment in those cases were in his favor, we do not set them out, nor his answer thereto. Appellants answered the actions with an admission of the collision and the resulting injuries and deaths, but denied any negligence in the respects alleged, pleaded gross contributory negligence of all parties, a joint mission, and that the negligence of Willett should be imputed to the others. Trial of the consolidated cases resulted in verdicts and judgments against appellants only as follows:

For Fred Beasley, loss of services of three

children .............................................................$ 3,000
For Fred Beasley for injuries to his wife ................ 2,000
For Louise Beasley ................................................ 10,000
For Roy Beal for death of wife ............................. 5,000
For T. R. Willett ................................................... 2,000

This appeal followed to reverse said judgments.

■ It is first insisted that the court erred in refusing to direct verdicts in favor of appellants. Many of the facts are not in dispute, some of which are: Highway 61 is of concrete and runs approximately north and south, and parallel with and just west of the railroad tracks of appellants. T. R. Willett owns and operates a cotton farm about one-half mile east of the railroad and about one mile south of a station called Frenchman's Bayou. He has lived on and operated this farm for the past .16 years, is a former railroad man and lost an arm in that service. There is a graveled roadway leading from highway 61, across the railroad tracks to his farm, and this road is his only means of ingress and egress to and from his farm with his truck or car, over which he has passed many hundreds of times. There is some dispute as to whether this road approaches and crosses the tracks at right angles or at an obtuse angle, but for the purpose of this opinion we assume that the crossing road runs slightly north of east in crossing the tracks from the highway which is about 90 feet west of the tracks. September is cotton picking time in Arkansas, and in the early morning of September 22, 1941, Willett picked up Louise Beasley and Fred Beasley's three children by a former wife, aged 13, 11 and 8 years, and Ollie Beal, all at Joiner, some few miles north of Frenchman's Bayou, and was taking them in his truck to his .farm to pick cotton for him. He proceeded south along the highway to the crossing road, referred to as the Willett Crossing, where he turned .east to go over the tracks and to his farm. The tracks are on an embankment about 6 feet higher than the land on either side, and as he left the highway he went over a slight depression in the road before reaching the incline to pass over the tracks. He was proceeding slowly and he says he looked and listened, changed to low gear and proceeded up the incline and did not see or hear the train until he was on the tracks and had nearly passed over when the rear end of his truck was struck by the train. Mrs. Beasley was seated in the cab of the truck with Willett and she says she neither saw nor heard the train until it was right on them.

Mrs. Beal and the Beasley children were riding in the bed of the truck behind the cab, and the four of them were instantly killed. Willett and Mrs. Beasley were severely and painfully injured. The train was traveling at 70 miles per hour. The evidence regarding the giving of signals for the crossing is in sharp dispute. A number of witnesses for appellees testified that the bell was not ringing, and that the whistle was not sounded until the moment of the collision. A number of witnesses for appellants said the crossing signals were given. Willett testified that bushes 8 or 10 feet high to the north prevented him from seeing the train when he started up the incline; that he brought his truck almost to a stop, looked, listened, neither saw nor heard the train and proceeded across, having to give some attention to the operating of his truck to keep it on the road and to watch for traffic that might be approaching from the other side of the tracks; that he changed to high gear when he got on top of the embankment, and, as he proceeded across, he saw the train too late for him to stop; and that the train operatives did nothing to check the speed of the train, did not cut off the steam or apply the brakes until he was hit. This was disputed by the engineer who said he saw the truck on the highway, saw it leave the highway and turn on the crossing road, but assumed it would stop, until it was too late for him to stop or to check the speed of the train before reaching the crossing. The photographs introduced in evidence tended, we think, to corroborate Willett that his view to the north was somewhat obstructed.

Under this state of the record we cannot say as a matter of law that the court should have directed a verdict for appellants, even as against Willett who was undoubtedly guilty of contributory negligence for two reasons. One is that, under our statute, § 11153, Pope's Digest, contributory negligence does not prevent a recovery against a railroad company where it is of less degree than the negligence of the company, and can only be considered in determining the amount of damages, that is, "the amount of recovery shall be diminished in proportion to such contributory negligence." Many cases

have construed and applied this statute, a number of which are cited under said section of the Digest. In some of them we have held as a matter of law that the contributory negligence of the plaintiff equalled or exceeded the negligence of the railroad company in failing to give crossing signals, notably the case of *Mo. Pac. Rd. Co.* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785, where we said: "It is inconceivable that a heavy train, traveling 70 to 72 miles per hour, could have been proceeding noiselessly, even though the whistle was not sounded or the bell rung. The truck was being driven over a paved highway. The grade of the crossing was almost negligible, but the truck was being driven up, and not down, this grade, whatever it may have been, and no one places Davis' speed at more than 10 miles per hour and the witnesses who placed it that high said 'From 5 to 10 miles per hour.' A mere glance to the east would have revealed the approach of the train in ample time to have stopped the truck, and the only excuse offered for not looking in that direction was that smoke was seen to the west, but the undisputed testimony is that this smoke was in McCrory, three miles west of the crossing."

Here, a somewhat different situation existed. The crossing road passed over a high embankment with a depression therein. The view to the north was not unobstructed. Although it was a clear day with the sun shining, it was about 7:30 a. m., and the train may have been somewhat blended into the surrounding landscape. At least, we think the jury had the right, under the facts here presented, to determine whether Willett's negligence was of less degree than that of appellants. That it did compare his negligence with that of appellants and diminished his recovery because thereof, is shown, we think, by the verdict for only $2,000 when the proof shows he was seriously and permanently injured.

The other reason for not directing a verdict against Willett is our lookout statute, above cited, § 11144, with reference to discovered peril. This statute imposes liability not only in cases of discovered peril; but also in those cases where, by the exercise of reasonable care, the peril might have been discovered. *Mo. Pac. Rd. Co.*

v. *Coca-Cola Bot. Co.,* 154 Ark. 413, 242 S. W. 813. Here
the engineer saw Willett drive off the highway and onto
the crossing road, saw him slow down almost to a stop,
and then start up again. We think the jury had the right
to conclude that the engineer saw the perilous situation
and should have at least slackened the speed of his train.
Only an instant more and the truck would have been in
the clear.

As to the alleged contributory negligence of the
others in the truck, or the imputation of Willett's con-
tributory negligence to them but little need be said. They
were cotton pickers, and no reflection upon them is meant
thereby. They had no control over the operation of the
truck and it is not shown that Mrs. Beal and the three
children in the back were in a position to have seen the
train. Mrs. Beasley did not see it until it was nearly
on them. Her view must have been obstructed, not only
by the bushes, but by the driver on her left. In the recent
case of *Mo. Pac. Rd. Co.* v. *Johnson,* 204 Ark. 604, 164 S.
W. 2d 425, we held that the negligence of the driver of an
automobile, under similar facts, could not be imputed
to guests in the car with him, unless they failed to exer-
cise ordinary care for their own safety, which was a ques-
tion of fact for the jury. Whether those in the truck were
guests of Willett or servants, it was a question for the
jury as to their contributory negligence.

■ Two other matters are argued for a reversal.
One is that the court erred in submitting to the jury said
lookout statute. The other is that the verdicts and judg-
ments are excessive. We cannot agree. We have already
shown the applicability of the lookout statute and we can-
not say the verdicts are excessive. Mrs. Beal was 49
years old, in good health, living with her husband earn-
ing about $2.50 per day as a cotton picker, in addition
to her other duties and was a good wife, with an ex-
pectancy of 21 years. The judgment in favor of Roy
Beal, her husband, for her death, was $5,000. Mrs.
Beasley was 26, was earning about $5 per day as a picker
and weigher, was in good health and received terrible
injuries which have totally and permanently disabled
her. She has suffered intense pain and will continue to

694

so suffer. She recovered $10,000 and her husband recovered $2,000, and he was awarded $3,000 for three children killed. We do not think those amounts while liberal are so grossly excessive as to justify a modification of them by this court, but on the contrary, that they are supported by substantial evidence.

The judgments are accordingly affirmed.