The Kansas City Southern Railway Co. v. Ratcliff.

4-7612                                   187 S. W. 2d 315

Opinion delivered May 7, 1945.

*Joseph R. Brown,* for appellant.

*Lee Seamster* and *Vol T. Lindsey,* for appellee.

GRIFFIN SMITH, Chief Justice. Clegg Ratcliff's automobile was badly damaged and his daughter and son, Maxine and Edwin, were injured when the car was struck by a Kansas City Southern double-header troop train at a crossing south of Gentry.[1] The car was being driven by Maxine, who testified that she was familiar with the crossing and that a slight grade leads to it. She could see about a sixth of a mile "up the track" toward Gentry—that is, to her right;—while to the south "down the track" the vision was clear, although the railroad passed through a slight cut. This, to a certain extent, obstructed observation until the driver had reached a point approximately twenty feet from the crossing.

Judgments on a jury's verdicts were in favor of Clegg Ratcliff for $400 for his car, $2,000 on account of Edwin's injuries, and $1,000 to Maxine. The defendant paid the $2,000 item—seemingly on the theory that the contributory negligence of Maxine was not imputable to Edwin. Appeal is from the judgments in favor of Maxine and her father.

There is testimony of a substantial nature that as the train approached the crossing at a rapid rate of speed the whistle was not blown nor the bell sounded, although this was denied by train operatives, and by disinterested witnesses.

---

[1] Maxine, unmarried, was twenty-one years of age and was a school teacher. Edwin was twelve years old.

Maxine testified it was raining slightly at two o'clock the afternoon of October 30th, 1943, when the automobile was struck. Edwin remarked that they should ascertain whether the track was clear, and Maxine claims that in response to this suggestion she looked in both directions and did not see a train. This precaution was taken when the automobile was twenty feet or more from the crossing. Car windows other than a ventilator were closed. The machine, moving about twenty miles an hour, was struck when almost across the railroad, and in a second or more it would have been "in the clear." Neither occupant heard the train; nor did they see it until the impact occurred. Maxine was rendered temporarily unconscious.

Patterson, engineer on the leading locomotive, testified that he did not see the automobile because it approached the crossing from the fireman's side. The first warning Patterson received was when the fireman called, "Hold her—car on track!" Emergency brakes were applied, but the train—weighing 1,900 tons—traveled 1,450 feet after striking the car.

J. A. Rounds, fireman on the second engine, testified he was keeping a lookout. While coming into Gentry the train's speed was twenty miles an hour, increased to thirty or thirty-five miles before the crossing was reached. This witness did not see the automobile because smoke and rain obstructed his view.

The first objection other than that the defendant was entitled to a directed verdict, is that the court erred in giving plaintiffs' Instruction No. 1. By it the jury was told that it was the duty of all persons running trains to keep a constant lookout for persons or property on the tracks, and if damage or injury results because of such negligence, the company must respond in damages "notwithstanding the contributory negligence of the person injured where if such lookout had been kept [those] in charge of such train could have discovered the peril in time to have prevented the injury. . . ." The instruction closed with the statement that the burden of proof devolved upon the defendant to show that the lookout was kept.

Undisputed facts, it is insisted, show that the collision was an accident, and that care exercised after the peril was discovered would not have affected the event, since the lookout statute was complied with.

It was not improper to give the instruction; nor can we agree with appellant that "The fireman was certainly warranted in concluding Maxine would stop before reaching the railroad." The fireman on the first or pilot engine (L. V. Butler) did not testify, and Rounds (second engine fireman) was not in position to effectively communicate with the engineer.

The only information disclosed by the record regarding Butler's conduct—whether alert or negligent—was the engineer's statement that his first information regarding the peril came when his fireman shouted that a car was on the track. The only inference reasonable minds would draw from this statement is that Butler did not observe the automobile until it was actually where he said it was—on the track. Admittedly the distance between track and any highway obstruction was at least twenty feet, and while the automobile was traveling this distance it was not seen by train operatives.

While testimony of trainmen is that the collision could not be avoided by any action upon their part after the peril was discovered, and although these employes thought a proper lookout was being maintained, inferences fairly deducible from physical facts, when considered with undisputed evidence, justified the jury's belief that there was inattention, and that the automobile could have been seen soon enough for train speed to be checked.

Maxine's apparent contributory negligence would not be a complete bar to compensation for personal injuries, the comparative rule being applicable. Her negligence, if it contributed to the event, would preclude recovery for property damage if the trainmen had kept a

proper lookout. *Coca-Cola Bottling Company* v. *Missouri Pacific Railroad Co.*, 161 Ark. 665, 356 S. W. 353.[2]

The second assignment is that there was failure to establish the defendant's negligence. What has been said answers this contention.

Appellant, in its brief, asserts that the motion for a new trial preserved defendant's exceptions. The transcript shows that the only matters brought forward (other than those raised by the three formal assignments) relate to the Court's refusal to give a peremptory instruction for the defendant; also its objection to Instruction No. 1, and its objection to the plaintiffs' Instruction No. 2. By Instruction No. 2 the Court undertook to tell the jury what the law's requirements were as to crossing signals: that is, the bell must be rung or the whistle sounded, etc. Appellant's objection does not point to any specific error. Since the instruction is not inherently wrong, the vice now complained of cannot be reached by a general exception.

Affirmed.

◼

---

[2] Act 140 of the Fifty-Fifth General Assembly (1945), carrying the emergency clause, changes the law respecting contributory negligence. It amends § 1 of Act 156, approved March 3, 1919, to read as follows: "In all suits against railroads for personal injury, property damage or death caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured, damaged or killed is of less degree than the negligence of the officers, agents, servants or employees of the railroad causing the injury, damage or death complained of; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such contributory negligence."