## THOMPSON v. BOSWELL.

### No. 10497.

Circuit Court of Appeals, Sixth Circuit.

Feb. 6, 1948.

———◆———

Walter P. Armstrong, Jr., of Memphis, Tenn. (Walter P. Armstrong, Emmett W. Braden and Walter P. Armstrong, Jr., all of Memphis, Tenn., on the brief; Armstrong, McCadden, Allen, Braden & Goddman, of Memphis, Tenn., of counsel), for appellant.

W. A. McTighe, of Memphis, Tenn. (William A. McTighe, of Memphis, Tenn., on the brief), for appellee.

Before HICKS, ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal by a trustee of a railroad company from a judgment of $5,600 for personal injuries in favor of the driver of an automobile who was injured at a railroad crossing at Cavell Crossing, Arkansas, by a freight train.

The case arises out of the following facts: On March 3, 1946, appellee, a war veteran recently discharged from the Marine Corps, was driving with numerous members of his family from Parkin, Arkansas, to Banner, Arkansas, to visit his father and mother. The accident occurred shortly after midnight. The appellee, who was driving a Ford V-8 truck, was unfamiliar with the highway, which crossed the railroad just before reaching McCrory and thence proceeded west parallel to the railroad track. At Cavell Crossing the highway curves sharply north for some 100 feet, until it is crossed by the railroad track. The freight train of 69 cars, mostly loaded, was proceeding east. Appellee had the windows of his car down but he and the two living adult witnesses riding in the car heard neither bell nor whistle until the truck was on the track. Appellee said that he saw a dim light which he thought was a "one-eyed car," and his sister testified to the same effect. The engineer stated that as he approached the crossing he saw the lights of an automobile coming toward the train running around "15 or 20 miles an hour." He said that he continued to look at the car and assumed it was going to stop. The testimony then continued as follows:

"Q. Now when it became apparent to you that it was not going to stop, but go on the track, what did you do, if anything? A. I didn't do anything, because the last time I saw him his front wheels was in the middle of the track, and I thought he ought to make it, which does happen quite often, they beat you across.

"Q. And what happened then? A. Well, I heard the crash, and when I did I applied my brakes in emergency on the train."

There was asphalt between the rails and this was scraped up making a hollow or depression. Asphalt was also found on the wheels, indicating that the back wheels of the truck were between the tracks when hit. The engine was struck on the left side. The truck was whirled around, two adults and five children being killed outright and appellee being seriously injured. The train, which was running about 45 miles an hour, proceeded some 5,000 feet before it stopped, the caboose being six car lengths from the crossing.

Appellant contends that the District Court erred in not taking the case from the jury because no substantial evidence of negligence on the part of the railway is presented. The case is governed by the law of Arkansas, the state in which the accident occurred, and the burden of proof is on the appellant to rebut the presumption of negligence arising from the accident. Davis v. Hareford, 156 Ark. 67, 245 S.W. 833, 835. In that case a railroad crossing accident was involved, and the railroad company contended that the evidence was not sufficient to support the verdict. The Supreme Court of Arkansas declared: "In this contention we cannot agree with counsel for appellant. The undisputed evidence shows that the injuries sustained by appellee were caused by the engine of one of appellant's passenger trains striking an automobile in which appellee and other members of his family were riding. The accident happened while they were attempting to cross the railroad track of appellant at a public road crossing. Under our statute this proof was sufficient to make out a prima facie case of negligence against the appellant. * * * under the long-established doctrine in this state where an injury is caused by operation of a railway train, a prima facie case of negligence is made against the company operating the train, and the burden of proof is upon the railroad company to rebut this presumption or inference of negligence." Citing Barringer v. St. Louis I. M. & S. R. Co., 73 Ark. 548, 85 S.W. 94, and St. Louis I. M. & S. R. Co. v. Armbrust, 121 Ark. 351, 181 S.W. 131.

The questions whether the signals were sounded and whether appellee exercised ordinary care under Arkansas law are questions of fact. Chicago, Rock Island & Pa-

cific R. Co. v. McKamy, 180 Ark. 1095, 25 S.W.2d 5.

We think the District Court did not err in overruling the motions for directed verdict. The evidence was in controversy on every material point. The employees of the railroad testified that the whistle was blown at the whistling post 1320 feet from the crossing and for an appreciable period before the accident, but substantial testimony was given to the effect that it was not blown until immediately before the crash. The question as to the ringing of the bell and the adequacy of the headlights was also in sharp controversy.

The District Court at the trial applied the provisions of the Arkansas Lookout Statute, § 11144, Pope's Digest of the Statutes of Arkansas, 1937, which reads as follows: "It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

Appellant contends that it was error to apply this statute, upon the ground that the uncontradicted evidence shows a lookout was maintained. We cannot agree that the evidence as to lookout is all in favor of the appellant. The engineer's testimony, for example, contained discrepancies and contradictions which the jury was entitled to consider in concluding that he had not maintained a proper lookout. Moreover, on this question the exact contention was made

and ruled against the railroad by the Supreme Court of Arkansas in St. Louis & San Francisco R. Co. v. Beasley, 205 Ark. 688, 170 S.W.2d 667, 669, decided in 1943. This case was not as strong on behalf of the automobile driver as the instant case, for the driver there was familiar with the crossing. In the Beasley case the engineer said he saw the truck on the highway, saw it leave the highway and turn on the crossing road, but assumed it would stop, until it was too late for him to stop or check the speed of the train before reaching the crossing. The appellant contended that the court erred in refusing to direct a verdict in its favor; and the court declared:

" * * * we cannot say as a matter of law that the court should have directed a verdict for appellants, even as against Willett who was undoubtedly guilty of contributory negligence for two reasons. One is that, under our statute, Section 11153, Pope's Digest, contributory negligence does not prevent a recovery against a railroad company where it is of less degree than the negligence of the company, and can only be considered in determining the amount of damages, that is, 'the amount of recovery shall be diminished in proportion to such contributory negligence'. * * *

"The other reason for not directing a verdict against Willett is our lookout statute, above cited, Section 11144, with reference to discovered peril. This statute imposes liability not only in cases of discovered peril; but also in those cases where, by the exercise of reasonable care, the peril might have been discovered. Mo. Pac. R. Co. v. Coca-Cola Bot. Co., 154 Ark. 413, 242 S.W. 813. Here the engineer saw Willett drive off the Highway and onto the crossing road, saw him slow down almost to a stop, and then start up again. We think the jury had the right to conclude that the engineer saw the perilous situation and should have at least slackened the speed of his train. Only an instant more the truck would have been in the clear."

Since the engineer here states that he saw the appellee approaching the crossing, assumed that he would "beat it across," and took no action to prevent the accident, under the doctrine of the Beasley case we cannot say that the court erred in submitting the

case to the jury. As in that case, the jury was entitled to conclude that the engineer should at least have slackened the speed of his train. In an instant more appellee's truck would have been "in the clear."

 The court also applied § 11153, Pope's Digest of the Statutes of Arkansas, 1937, which reads as follows: "In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

It is a fair inference from the record and the verdict that the jury found the appellee to be negligent and found that the negligence of the appellee was less than that of the appellant. If appellee was entirely free from blame, the verdict was modest for his serious injuries. It was a question of fact for the jury whether appellee's negligence was of a less degree than that of the railroad company. Chicago, Rock Island & Pacific R. Co. v. French, 181 Ark. 777, 27 S.W.2d 1021.

It was contended that the fact that four persons sat in the front of the truck, in violation of § 6752 of Pope's Digest of the Statutes of Arkansas, 1937, conclusively determines that the accident was due to the sole negligence of the appellee. Since the obstruction to appellee's vision from this circumstance was on the right and the train came from the left, we consider this fact immaterial under this record.

Appellant cites many decisions which it claims support its view of the case. A crossing case depends primarily on factual considerations, and we shall not attempt to point out the facts which in each case distinguish appellant's citations from the case at bar. The decisions cited herein are closest on the facts, are unreversed, were not cited or answered in appellant's brief, and they support recovery. Davis v. Hare-

ford, supra; St. Louis-San Francisco R. Co. v. Beasley, supra; Kansas City Southern Ry. Co. v. Ratcliff, 208 Ark. 669, 187 S.W.2d 315.

The judgment of the District Court is affirmed.