ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. HORN.

Opinion delivered March 16, 1925.

1. RAILROADS—FAILURE TO SIGNAL—FINDING.—In an action for death at a railroad crossing, conflicting evidence as to whether any signals were given by the trainmen after the signal at the whistling post, *held* sufficient to sustain a finding that such signals were not given.

2. RAILROADS—FAILURE TO KEEP LOOKOUT—EVIDENCE.—In an action for a death at a railroad crossing, evidence that the fireman was not keeping a lookout but was firing the engine, and that the engineer, with a straight track ahead, failed to see deceased in time to give warning, *held* sufficient to show a negligent failure to keep an efficient lookout, and to sustain a finding that such negligence was the proximate cause of the injury.

3.  Negligence—contributory negligence.—Under Crawford &
:   Moses' Digest, § 8568, contributory negligence is no defense in
    case of a failure to keep a lookout where, if such lookout had
    been kept, the trainmen could have discovered the peril of the
    person injured in time to have prevented the injury.

4.  Negligence—comparative negligence—jury question.—In an
    action for death at a railroad crossing, though deceased was
    negligent in failing to keep a proper lookout, yet, in view of
    deceased's youth and inexperience, it can not be said, as matter
    of law, that his negligence was equal to or greater than that
    of the trainmen.

5.  Negligence—degree of negligence a jury question.—The legal
    sufficiency of evidence, or the question of the degree of negli-
    gence, must be tested by the state of the testimony presented in a
    given case, and is ordinarily a question of fact for the jury
    to determine.

6.  Negligence—comparative    negligence—instruction.—In    an
    action for a death at a railroad crossing, an instruction per-
    mitting recovery unless deceased's contributory negligence was
    the sole and proximate cause of the injury was erroneous,
    under Crawford & Moses' Dig., § 8575, which provides contrib-
    utory negligence shall not bar recovery if it is of less degree
    than the negligence of the trainmen.

7.  Trial—conflicting instructions.—It was error to give an
    instruction that was self-contradictory and in conflict with other
    instructions given.

8.  Negligence—instruction as to duty of traveller at crossing.
    —In an action for death at a railroad crossing, an instruction
    that the duty of deceased was merely to exercise reasonable care,
    instead of a specific duty to look and listen, was erroneous, though
    his contributory negligence was admitted, since it was for the
    jury to determine the degree of negligence of each party.

9.  Evidence—photographs.—Photographs of the scene of the acci-
    dent, though not affording an accurate test of distance, were
    admissible in evidence where they were of some value in placing
    before the jury other surroundings of the injury, accurate meas-
    urements having been taken of the distances.

Appeal from Washington Circuit Court; *W. A. Dick-son*, Judge; reversed.

*W. F. Evans* and *Warner, Hardin & Warner*, for appellant.

*John W. Nance*, for appellee.

McCulloch, C. J.   Two young men or boys, named Paul Spittler and Hubert Mills, were both killed in a

collision between a tractor on which they were riding and a passenger train of appellant's, while the tractor was being driven across the railroad track along a public highway in Benton County. Mills was driving the tractor, and Spittler, a boy sixteen years of age, was riding on the fender over the rear left wheel of the tractor. The railroad track runs north and south at that place, and the highway crossing was at right angles. The tractor was, at the time of the collision, being driven across the railroad track from east to west. The highway was lower than the track, and there was a five per cent. grade between the level of the railroad track and the highway at a distance of sixty feet from the crossing. The crossing in question is about three-quarters of a mile south of the town of Lowell, and, according to the undisputed evidence, the track is straight from the railroad crossing northward to the whistling post, which is 1,418 feet from the crossing, and for a further distance of 87 feet north of the whistling post, at which point a curve begins. In other words, the track is perfectly straight for a distance of 1,505 feet northward from the crossing. There is a slight conflict in the testimony as to the distance a train could be seen from the highway as the crossing was approached. It is undisputed, however, that a person riding on a tractor could, within 85 feet of the railroad track, discover the approach of a train at a very considerable distance.

This is an action instituted by appellee as administrator of Spittler's estate to recover damages for the benefit of the next of kin.

The evidence shows that Spittler was instantly killed as the result of the collision. The charge of negligence on the part of appellant's servants is in failing to keep a lookout and in failing to give the statutory signals. Appellant answered, denying the allegations of negligence, and pleading contributory negligence on the part of deceased equal to or greater in degree than the alleged negligence of appellant's servants.

There was a trial of the issues, which resulted in a verdict in favor of plaintiff for the recovery of $3,000 for the benefit of the mother of deceased as next of kin. It is insisted that the evidence does not sustain the verdict. Our conclusion is, after careful consideration of the evidence, that it is legally sufficient to support a finding that the men in charge of the operation of the engine failed to give the statutory signals; and also that they were guilty of negligence in failing to keep a proper lookout, and that the injury would not have occurred if a proper lookout had been kept.

It is undisputed that the crossing signal was given at the whistling post with the customary four blasts of the whistle, but there is, we think, a substantial conflict in the testimony as to whether or not any signals were given thereafter. The engineer and fireman both testified that the bell was kept ringing from the whistling post down to the crossing, and the engineer testified that the whistle was sounded again after passing the post and before reaching the crossing. But there is substantial testimony from which the jury might have found that there were no signals given, either by bell or whistle, after the whistle was sounded at the post. It is contended by learned counsel for appellant that the testimony on that point is merely negative, but we are of the opinion that the testimony is of more force than that. Witnesses testified that they did not hear the bell, and the jury might have found that the bell was not rung, otherwise the witnesses would have heard it.

The testimony was also legally sufficient to justify the submission of the issue whether or not there was negligence in failing to keep an efficient lookout and whether or not such negligence was the proximate cause of the injury. The engineer testified that he was at his post on the engine, keeping a lookout, but that, as he came around the curve, he could not see from his side of the engine objects on the right-of-way near the crossing, on account of the obstruction of the front of the engine. But the jury might have found from the evidence that,

with a straight track ahead, the engineer could have seen the tractor as it approached the crossing in time to have given an additional warning, and thereby avoided the collision. The testimony is undisputed that the fireman was not keeping a lookout at all, but was engaged in working with the fire in his engine. We cannot say, under these circumstances, that the jury was not warranted in finding that an efficient lookout was not being kept. Nor can it be said from the undisputed evidence that the negligence in this respect, as well as with regard to the failure to give signals, was not the proximate cause of the injury.

It is undisputed, we think, that both of the men on the tractor were guilty of negligence in failing to discover the approach of the train in time to avoid the collision. The negligence of the driver is not imputed to appellee's intestate, but the testimony shows that the latter was guilty of contributory negligence in not exercising care for his own safety. He could have seen the approaching train, if he had looked to the north, and could have warned the driver of the danger, or could have leaped from the tractor and thus escaped injury himself. The tractor was driven in low gear, according to the undisputed evidence, and could easily have been brought to a full stop while the train was approaching, and, as before stated, appellee's intestate as well as the driver was guilty of negligence which contributed to the injury.

The "lookout statute" (Crawford & Moses' Digest, § 8568) absolutely excludes the defense of contributory negligence in case of a failure to keep a lookout "where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after discovery of such peril." The jury may or may not have found that a lookout was not kept, and may have based the verdict on a finding upon that issue. If so, there is sufficient evidence to sustain the verdict.

On the other hand, the jury might have found that the employees kept an efficient lookout, but failed to give the statutory signals, and that the contributory negligence of the deceased was not equal to or greater in degree than the negligence of the employees of appellant in failing to give the signals.   The statute in regard to contributory negligence in actions based on negligence other than that of failing to keep a lookout reads as follows:

"Section 8575.   *Personal injury or death—contributory negligence.*   In all suits against railroads for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."   Crawford & Moses' Digest.

It is earnestly insisted that we ought to say that, under the circumstances of this case, it is undisputed that the negligence of appellee's intestate was at least equal in degree to that of the servants of appellant in failing to give the signals.   We do not, however, think that this should be said as a matter of law, but that, under the circumstances of the case, it was a question to be left to the jury.   It is true that appellee's intestate had abundant opportunity to avoid the injury if he had taken the pains to look both ways for the approach of a train, and he was guilty of negligence in failing to do so, but, in testing the degree of his negligence when compared with that of the negligence of the servants of appellant in failing to give the statutory signals, the youthfulness and inexperience of Spittler must be given consideration.   Another circumstance in the case worthy of consideration is the fact that Spittler was on the left-hand or south side of the tractor, and may have devoted

his attention to looking in that direction, depending to some extent upon the driver of the tractor to be more diligent in looking both ways. Now, this did not excuse him, and, as before stated, he was guilty of negligence, but these circumstances should have been considered as compared with that of the servants of appellant, and we cannot say that as a matter of law his negligence was equal in degree or greater than that of appellant's servants.

We have not failed to give consideration to the decision, cited by counsel for appellant, of the United States Circuit Court of Appeals for the Eighth Circuit in *Bradley* v. *Missouri Pacific Railroad Co.*, 288 Fed. 484, where that court held that, upon the undisputed facts of the case, the contributory negligence of the injured traveler equaled or exceeded in degree the negligence of the trainmen. Each case must, of course, be considered upon its own peculiar facts, and the legal sufficiency of the evidence on the question of degree of negligence must be tested, the same as in other cases, by the state of the testimony presented in a given case. In other words, it is ordinarily a question of fact for the determination of the jury, but there may, as in other cases, be presented a question for the decision of the court as to the legal sufficiency of the evidence. In the present case we are of the opinion, however, as already stated, that the facts presented made a question for the jury to determine the comparative degrees of negligence.

There are numerous assignments of error in regard to the court's charge to the jury, and several of these assignments are of sufficient importance to discuss.

One of the assignments relates to the following instruction, No. 5, which was given by the court over the objection of appellant:

"If you find from the evidence that the persons in charge of the train failed to either sound the whistle or ring the bell in the manner defined in instruction No. 2, which I have given you, or that the persons in charge of said train failed to keep and maintain a constant and

efficient lookout for persons and property upon or near
the track, as defined in instruction No. 1, which I have
given you, and such failure was the proximate cause of
the injury to and death of the deceased, Paul Spittler,
then your verdict should be for the plaintiff, unless you
further find from a preponderance of the evidence that
said deceased negligently failed to look and listen for
the approach of the train, and that such negligence was
the sole and proximate cause of his injury.''

There were several specific objections made to the
instruction, one of which objections relates to the con-
cluding words, ''unless * * * such negligence was the
sole and proximate cause of his injury.'' The use of
this language puts the instruction directly in conflict with
the terms of the statute, *supra,* which provides that con-
tributory negligence shall not bar recovery if it is of less
degree than the negligence of the servants of the rail-
road company. The test under the statute is not whether
the contributory negligence is the sole and proximate
cause of the injury, but whether or not it is equal to or
exceeds the negligence of the servants of the company.
Under this instruction the jury might have found that
the negligence of Spittler was equal to that of the ser-
vants of the company but was not the ''sole and proxi-
mate cause of his injury,'' and might, under that finding,
have based a verdict for appellee. Hence the instruc-
tion was not only erroneous but may have been prejudi-
cial.

The same question arises on instruction No. 6,
requested by appellee and modified and given by the
court. The first part of the instruction, as requested
by appellee, told the jury in substance that the failure
on the part of the deceased to look and listen would
not bar recovery unless it was found that his negligence
''was of a greater degree than the negligence of the
defendant's employees in charge of the train.'' The
latter part of the instruction, and the modification made
by the court, made a conflicting instruction—one that
was conflicting in itself as well as being in conflict with

other instructions. It may have been prejudicial, as much so as instruction No. 5, hereinbefore referred to. The giving of these two instructions calls for a reversal of the judgment.

The court also erred in giving instruction Nos. 4, 7, and 9, in stating the duty of the traveler merely to exercise reasonable care, instead of saying that there was a specific duty to look and listen for the approach of trains. All three of the instructions mentioned contain that error, and No. 7 reads as follows:

"I charge you that the deceased, Paul Spittler, and his companion, Hubert Mills, each had a lawful right to drive the tractor upon and across defendant's railroad track, subject only to a duty that the law imposed upon them to exercise reasonable care to discover the approach of trains on said track, and by reasonable care I mean such care as a person of ordinary prudence would exercise under similar circumstances."

The duty of a traveler in this respect has been announced in so many decisions of this court that it is scarcely necessary to cite authorities. It is true that, in the present case, the contributory negligence of Spittler is undisputed, and it was unnecessary to submit that issue to the jury except in determining the degree of negligence as compared with that of the servants of the company, but appellant was entitled to have the jury correctly instructed as to the duty of the travelers in making the crossing, so that they would have some guide in comparing the negligence in that regard with the conduct of those in charge of the train. They were entitled, in other words, to have the jury told what the duty of the traveler was with respect to looking and listening for the approach of trains, as it was a question for the jury to determine the degree of negligence of each party.

We deem it unnecessary to discuss other portions of the court's charge. In view of the reversal, however, there is one other question that may arise, and should be discussed. That is in regard to the assignment of error in the ruling of the court in permitting photographs to be

introduced by appellee. A photographer was introduced by appellee as a witness, who testified that he had taken kodak pictures of the railroad crossing in question and the surroundings, and that the pictures were enlarged by photographs taken from the originals. The photographer testified that the pictures were accurate, but admitted on cross-examination that the distances from the crossing to other points on the track could not be accurately gauged merely by looking at the pictures. The photographs were introduced in evidence over objections of counsel for appellant, and the ruling of the court in admitting them is now assigned as error. The contention is that the proof is undisputed that these photographs do not afford accurate tests of distances, and that it was error to let them go before the jury. The photographer testified that the pictures were absolutely accurate and that they truly portrayed the scene of the injury, but, as before stated, he admitted that a person merely looking at the pictures could not tell the distance from the highway crossing to a point up the track. This did not, we think, destroy the value of the photographs as evidence. Various witnesses testified about the distances, and, while the photographs may not have afforded information on that subject, yet they were of some value in placing before the jury the other surroundings of the injury. Moreover, it is difficult to see how any prejudice could result from the introduction of these photographs, because the testimony is undisputed with respect to the situation along the highway and the railroad track at the point of intersection. Accurate measurements were taken, and witnesses testified without dispute as to the height of the railroad and of the highway and its approaches to the track, and also the distance northward from the highway crossing along the railroad track to the whistling-post and to the curve.

For the error in the instructions hereinbefore indicated the judgment will be reversed, and the cause remanded for a new trial. It is so ordered.