MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE *v.* KING.

4-6010                                  143 S. W. 2d 55

Opinion delivered June 24, 1940.

—PAGE 1067]

*Henry Donham,* for appellant.

*W. F. Denman, John Ferguson* and *Tom W. Campbell,* for appellee.

SMITH, J. At about 9 o'clock on the night of September 25, 1938, a southbound passenger train of the Missouri Pacific Railroad Company ran over and severed appellee's foot. He recovered judgment in the sum of $15,000 to compensate the injury, and from that judgment is this appeal.

The injury occurred at the Third street crossing in the town of Beebe. It is not questioned that appellee was guilty of contributory negligence, but the cause was tried upon the theory that the negligence of the railroad company was greater than appellee's negligence. This issue was submitted to the jury under an instruction numbered 4, given at appellee's request, which reads as follows: "You are instructed that in all suits against railroads, for personal injury, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured, the amount of recovery shall be diminished in proportion to such contributory negligence."

There is no question as to the competency of any testimony admitted or excluded, and the controlling question is that of the sufficiency of the testimony to support the finding that the negligence of appellee was of less degree than that of the railroad company. This is ordinarily a question of fact for the jury, but, as was said in the case of *Missouri Pacific Railroad Co.* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785, quoting from the

case of *St. Louis-San Francisco Railway Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576, cases may arise in which the question becomes one of the legal sufficiency of the testimony to support the finding made, and that this is a question of law for the court.

In passing upon this question of the legal sufficiency of the testimony to support the verdict, we must —and we do—give to the testimony offered in appellee's behalf, and to the undisputed testimony its highest probative value, with all the inferences properly deducible therefrom.

When so stated and viewed, the testimony is to the following effect. The injury occurred on a railroad track in front of the office and hospital of Dr. W. H. Abington, which is on Third street, directly facing the railroad. Dr. Abington heard appellee cry out after the train ran over appellee's foot, and he went at once to the place where appellee was found, and he and two other men carried appellee to the hospital, where an immediate operation was performed and appellee's leg was amputated. As appellee was being carried to the hospital, Dr. Abington asked him, "What is the matter, old man, how come you let that train hit you out there on a straight track?" Appellee answered: "I guess I didn't pay attention, and when I first noticed the train it was so close to me I didn't have time to get off the track, and it excited me and I started to run and struck my foot against the rail and fell."

Appellee denied this testimony only inferentially in detailing the circumstances of his injury, which he described as having occurred in the following manner. He started walking at "a common gait" over the tracks crossing Third street. The first track which he crossed was the switch track. North of the crossing on this switch track there were some boxcars, which obstructed the view north on that track. Next in order was the north mainline track, on which northbound trains ran. Next in order was the south mainline track, on which southbound trains ran.

Third street, on which appellee was walking, is a gravel street, and is narrow, and as appellee approached the south mainline track he saw a truck approaching the railroad crossing on Third street which he thought was about to cross the railroad, but upon reaching the intersection of Third street and highway No. 67, the truck turned to the left and proceeded north on highway 67. Appellee stepped aside to permit the truck to pass, as he supposed it intended to do, and as he did so he tripped or stumbled over the gravel and fell. It was 113 feet from the place where he fell to the point where Third street intersects highway 67.

Appellee testified as follows: "Q. Tell the jury whether or not you looked and listened for trains before going on the tracks of the railroad? A. I looked both ways and listened before I started on it. Q. Could you see any train? A. No, sir. Q. Did you hear any train? A. I heard a train whistle way down by the lumber shed. Q. How far away is the lumber shed from the crossing where you were? A. I judge a half mile. Q. Were you familiar with the operations of trains down about the lumber shed—was there any switching ever done down there? A. Yes, sir. Q. What was that situation—what make of trains switched down there around the lumber shed? A. There was a switching track there and they switched at all times. Q. State whether or not it was a usual thing for freight trains to whistle down at the lumber shed? A. Yes, sir. Q. Was there any obstruction between you and the direction where you heard that train whistle north—was there any obstruction there? A. Yes, sir. Q. What was there? A. The freight house and two box cars on the spur track beside the freight house. Q. After you passed on over the switch track—that would put you past the obstruction—tell the jury whether or not you looked up the track when you got past the box cars—did you look up the track, north? A. Yes, sir. Q. Did you see any train up there? A. No, sir. Q. Did you hear any train up that way after you heard

the train whistle? A. No, sir. Q. What did you do then? A. Well, I proceeded to go on across.''

Appellee further testified that after falling, as hereinabove stated, he saw the train right on him as he attempted to get up, and he made a desperate effort to get out of the way, but failed to get one leg out of the way.

It is an undisputed fact that after appellee had crossed the switch track, there was nothing to obstruct his vision for a great distance to the north and far beyond the lumber shed, where he said he heard a train whistle, and the fact is undisputed that he was struck by the train whose whistle he heard. There was no other train in that vicinity.

We know as a physical fact—the testimony of appellee to the contrary notwithstanding—that, had he looked to the north after crossing the switch track, he would have seen the headlight of the engine. Numerous witnesses testified that the headlight was burning, and no one testified to the contrary, although several testified that it was not burning as brightly as headlights usually burn, but was red or dim and not bright. When asked if the headlight was burning, appellee answered that he did not know. The physical fact is that he would have known had he looked.

The train was a passenger train, and the testimony is that it was running at an excessive speed—70 miles or more per hour. The testimony is conflicting as to whether any signal, by bell or whistle, was given after the train passed the lumber shed, but as there was testimony that no signals were given by the train except the one appellee admitted having heard, we assume there were no other signals.

There is no contention that appellee's peril was discovered in time to have prevented his injury after its discovery, and this question of discovered peril was not submitted to the jury. The operatives of the train did not testify, and there was no testimony to support a finding that appellee's peril could have been discovered

in time to have avoided striking him, had a proper lookout been kept, as he was not walking on the track, but was walking toward it. *Mo. Pac. Rd. Co.* v. *Merrell, ante,* p. 1061, 143 S. W. 2d 51.

The testimony is undisputed that the railroad company maintained crossing bells or gongs at Main street, which is two blocks north of Third street, and at Second street, which is one block north, and the testimony is also undisputed that these gongs were operating at the time of appellee's injury. There was no gong at the Third street crossing.

These gongs operate through an electrical contact, which is made when the wheels of a train reach a point 2,000 feet from the gong, and continue to ring until the train has passed 2,000 feet on the opposite side of the gong. All the witnesses appear to have heard these gongs except appellee, although several of them testified that "They go Tingle! Tingle!" But there appears to be no question that, had appellee listened, he could have heard either of the gongs, both of which were going "Tingle! Tingle!" One of the gongs was 600 feet from the place of injury, the other was only 300 feet removed.

It was held in the case of *St. Louis, Iron Mountain & Sou. Ry. Co.* v. *Coleman,* 97 Ark. 538, 135 S. W. 338, which holding has since been frequently reaffirmed, that a railroad track is universally recognized as a place of constant danger, and that a traveler, when about to cross the track, is required to look and listen for approaching trains, and must continue to look and listen until the danger is past, and that he must look in both directions, and must stop if that action is necessary to make his view effective, and that only in exceptional cases is it proper to submit to the jury the question whether or not the failure to exercise such caution constitutes negligence.

In the case of *Chicago, Rock Island & Pacific Ry. Co.* v. *Batsel,* 100 Ark. 526, 140 S. W. 726, it was held that where the undisputed testimony shows that the injured person, by looking or listening, had the opportunity to

see or hear the approaching train in time to have avoided injury had he used ordinary care in looking or listening, under the law he will be deemed to have seen or heard the train, although he should testify that he looked and listened and did not either hear or see the train. That holding has since been frequently reaffirmed.

The physical fact is, therefore, that, had appellee looked, he must have seen the train. There would have been visible, not only the headlight, but the lights from the passenger train itself. Now, appellee admits that he heard a train whistle, and there was only one train in that vicinity. He placed the location of the train which he heard whistle at or about the lumber shed. By actual measurement, the south end of this shed was 1,103 feet north of the place of injury. The north end of the shed was 1,418 feet north of the place of injury.

The mayor of Beebe testified that he heard the train whistle at about 8 blocks north of the place of injury, and that the whistle was sounded at no other place.

The testimony is conflicting as to whether the whistle was continuously sounded, or again sounded, as it ran through the town, and in view of this conflict in the testimony it must be assumed that the whistle was blown only one time.

It was held in the case of *St. Louis-San Francisco Ry. Co.* v. *Ferrell*, 84 Ark. 270, 105 S. W. 263, that the purpose of signals by bell or whistle is to notify people of the coming of a train, and that, when they have that knowledge otherwise, signals cease to be factors. That holding has since been frequently reaffirmed.

Here, appellee admits that he heard a whistle sound at the lumber shed, and the slightest attention to his situation would have apprised him of the approaching train, yet he continued walking at a "common gait" across the tracks. The undisputed testimony is that the measured distance from the west rail of the spur track on the east side to the center of the southbound mainline track is 23 feet and 8 inches. Appellee had only to

stop at any point within that distance to be in a place of safety. He acted under no emergency, according to his own testimony, he had been awaiting around the berry shed which is at the Third street crossing, and from which shed the crossing takes its name, for a considerable period of time.

The only excuse offered by appellee for his indifference and inattention is that he stepped aside to permit the truck to pass, which did not even cross highway 67, which it would have had to do to come upon the railroad property. The measured distance from the center of the south mainline track, where appellee says he stepped aside, to the west side of the highway, is 113 feet. The railroad track is on a dump 8½ feet higher than highway 67, which it parallels, and the truck, had it continued across the railroad tracks, would have had to ascend this dump.

It appears to us that there is no reasonable view of this testimony except that appellee's own gross negligence was the sole proximate cause of his injury.

Prior to the passage of our Comparative Negligence statute (§ 11153, Pope's Digest), any negligence on the part of a traveler contributing to his injury would have defeated a recovery of damages on his part; but the effect of this statute is to permit a recovery, notwithstanding the negligence of the person injured, if that negligence is of less degree than that of the operatives of the train.

We think that under no reasonable view of this testimony can it be said that the negligence of appellee was of less degree than that of the operatives of the train. It is conceded that the testimony supports the finding that there was negligence on the part of the railroad company; but this negligence was not the proximate cause of the injury, and was of far less degree than that of appellee.

If a recovery may be sustained in this case, it would appear to follow that a recovery could be had in any case upon the showing that the negligence of the railroad

company contributed in any degree to the injury; but this is not the law.

Negligence on the part of the railroad company, although it contributes to the injury, does not alone suffice. It is essential that this negligence be of a greater degree than that of the person injured. To so hold in this case appears to be arbitrary and unsupported by any reasonable view of the testimony. Here, there was a straight track for an indefinite distance. Appellee heard the whistle of a train and, without looking to see where the train was, he assumed that it was switching at the lumber shed. It is inconceivable that, had he listened, he would not have heard the approach of the train. Of necessity, a train traveling 70 miles or more per hour would make a great noise. Then, again, it is undisputed that the crossing gongs, with which we are all familiar and which every one has frequently heard, were sounding at the crossings 300 and 600 feet away. Such testimony is insufficient to support the finding that the negligence of appellee was of a less degree than that of the operatives of the train, and the judgment must, therefore, be reversed, and, as the case appears to have been fully developed, it will be dismissed. It is so ordered.

HUMPHREYS and MEHAFFY, JJ., dissent.