Missouri Pacific Railroad Company, Thompson, Trustee, *v.* Magness.

4-7275                                          178 S. W. 2d 493

Opinion delivered March 13, 1944.

*Henry Donham* and *Leffel Gentry,* for appellant.

*Agnes F. Ashby* and *J. H. Lookadoo,* for appellee.

HOLT, J.  Dr. W. C. Magness, appellee, recovered a judgment in the amount of $20,000 against appellants for personal injuries received by him March 3, 1942, when the automobile which he was driving was struck by a freight train at a crossing near Gurdon, Arkansas. The acts of negligence relied upon by appellee were that the train was operating without a headlight, the statutory signals were not given, the train was traveling at an excessive rate of speed, and failure of the employees of appellant, railroad, to keep a proper lookout, and that if said lookout had been kept, appellee's perilous position could have been discovered in time to have avoided injuring him.

Appellants answered with a general denial and in addition pleaded that appellee's injuries were the result of his own contributory negligence.

For reversal, appellants contend that: (1) The negligence of appellee was the proximate cause of his injury. (2) The negligence of appellee was equal to or greater than the negligence of the appellants. (3) The verdict is excessive. (4) Appellee's instruction No. 1 was erroneous.

### 1, 2 & 3

The facts most favorable to appellee disclose that Dr. Magness drove in his automobile to Smithton, Arkansas, to see a patient. When he reached that village, he drove from west to east on highway 51 over the main line railroad crossing, where two negro girls, who were to direct him to his patient, got in his car. He then turned south and drove along the gravel road paralleling the railroad track for about a quarter of a mile to a point where the highway made a right angle turn and crossed over appellants' tracks at what is referred to as the mill crossing, leading to the W. I. Wilkie Lumber Company. As he made the right angle turn to negotiate this mill crossing, appellee brought his car almost to a complete stop and he testified that he looked and listened for a train at the time he made the turn from the highway, but did not thereafter look until his automobile traveling in second gear at five or ten miles per hour reached the first or second set of tracks. The first set of tracks is 46 feet from the highway and the third set, on which the collision took place, is 74 feet. It had rained during the day and the highway leading upgrade to the tracks was slick and muddy. On that day, the sun set at 7:07 p. m., War Time, a fact of which we take judicial notice. Jones on Evidence, Civil Cases, 4th Ed., vol. 1, § 129, p. 228. Dr. Magness testified that the collision occurred, "I would say around from 6:45 to 7:00 o'clock, War Time," that he left Gurdon after 6:00 o'clock. There was nothing to obstruct his view of the train. He further testified that it was dusky dark at the time, and that there was

nothing to obstruct his view but the telephone poles. The lights on his automobile were burning. He first saw the train approaching just before he drove on the third set of tracks. He thought he had time to cross ahead of the train, but unfortunately, the engine struck the rear of his car and injured him severely. There was a lumber mill about 75 feet east of the crossing, in which lights were burning and which was operating with considerable noise. The engine headlight was not burning and the statutory signals were not given.

Appellee's witness, Vivian Harper, testified that he saw the train strike Dr. Magness' car on the third set of tracks; that he was standing about 400 yards away and saw the train and the car clearly; that the time was about five minutes to seven, War Time, or five minutes before his quitting time; that he first saw Dr. Magness' car coming down the highway and fixing to turn to go over the crossing; that his lights were on; that Magness slowed down as he made the turn from the highway, eased down into the mud hole that was there and then started to come across the crossing; that he saw the train after he saw the car; that there was no whistle blown and no bell rung; that the train struck the rear of the Magness car and was running about 45 miles per hour at the time. The negro girls tended to corroborate Dr. Magness.

The engineer of the train testified that it was a 75-car freight train; that he was keeping a constant lookout before he reached the crossing in question, but did not see appellee until within four or five feet of him and too late to stop the train and avoid the collision. He admitted that the headlight was not burning, but stated that it was not needed; that he could see as far as a man's eye could see—a mile or farther. He further testified that the bell was ringing and the whistle blowing. The fireman did not testify.

Appellee received serious injuries, five ribs were broken and one lung was punctured. He testified that his earning capacity had been reduced 50 per cent. and that his injuries were permanent. At the time of the

1084

trial, he was practicing his profession in Camden, associated with a clinic there and earning approximately $200 a month, net.

Section 11135 of Pope's Digest requires railroad companies to ring the bell or blow the whistle at crossings, that is, to do one or the other, beginning 80 rods away and to continue until the crossing is passed.

We think there was substantial evidence which would support the jury's finding that neither of these signals was given in the instant case and that such failure was negligence. We are also of the opinion that there is substantial testimony to support a finding that a proper lookout was not kept by the operatives of the train.

Section 11144 of Pope's Digest imposes liability not only in case of discovered peril, but also in those cases where in the exercise of reasonable care, the peril might have been discovered.

While, as indicated, we think there is substantial testimony showing appellant's negligence, we are also clearly of the opinion, and hold as a matter of law, that appellee was guilty of contributory negligence. His negligence, however, would not preclude recovery if it were not shown to be equal to or greater than that of appellant, railroad company, under our comparative negligence statute, § 11153 of Pope's Digest. Under that section, contributory negligence does not prevent a recovery against a railroad company where it is of less degree than the negligence of the company, but such contributory negligence may be considered in determining the measure of damages, that is "the amount of recovery shall be diminished in proportion to such contributory negligence." *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *King,* 200 Ark. 1066, 143 S. W. 2d 55.

The undisputed evidence is that on the day of the injury in question, the sun set at 7:07 p. m., War Time. Appellee says the injury occurred between 6:45 and 7:00 o'clock, which was before sundown. While it was cloudy, it was not raining. One of appellee's witnesses, Vivian Harper, testified that it was light enough for him to see

the collision clearly a distance of 1,200 feet, and that it was five minutes before seven o'clock, or quitting time. Appellee admitted that he did not look for an oncoming train during the time that he traveled from the turn off the highway, until he reached within a few feet of the west track on which he was struck, a distance of between 60 and 74 feet. It was his duty, in approaching the track in question, to look both ways from the time he left the highway until the point of danger was passed, and this he did not do. In failing to look, he was guilty of negligence. From the physical facts, had he looked, he could have seen what was obvious, the approaching train, an object that Vivian Harper saw 1,200 feet away.

In *Missouri Pacific Railroad Co., L. W. Baldwin, et al., Trustees,* v. *Brewer,* 193 Ark. 754, 102 S. W. 2d 438, this court said: "While plaintiff testified he stopped his car in the approach to the crossing and looked and listened, it is significant that he failed to say he continued to observe this precaution after he started to drive upon the crossing. He failed in his duty in this. One must not only look and listen, but continue to do so until the point of danger has been passed. *St. Louis, I. M. & S. Ry. Co.* v. *Johnson,* 74 Ark. 372, 86 S. W. 282; *Choctaw, O. & G. R. Co.* v. *Baskins,* 78 Ark. 355, 93 S. W. 757; *St. Louis, I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 315, 142 S. W. 499. . . . The physical facts not only dispute plaintiff's testimony relating to the precaution he took before driving upon the crossing, but completely refute it. If he had used his sense of sight, or hearing, as he said he did, he was bound to have both heard and seen the approaching train. Certainly this is true if he had continued to look and listen during the time he was moving toward the crossing."

We cannot say, however, as a matter of law, that appellee's negligence equaled that of appellants. The size of the verdict indicates that the jury failed to take in account appellee's contributory negligence and did not reduce the amount of recovery in proportion to appellee's negligence. This error may be corrected by reducing the recovery to the highest amount that a jury

would be warranted in awarding appellee on the facts before us. *St. Louis-San Francisco Railway Company* v. *Beasley*, 205 Ark. 688, 170 S. W. 2d 667, and *Missouri Pacific Railroad Co., Thompson, Trustee,* v. *McKamey*, 205 Ark. 907, 171 S. W. 2d 932. When this is done, it is our opinion that no verdict in excess of $12,500 should be sustained.

Appellant also argues that the trial court erred in giving plaintiff's instruction No. 1. While it is true that this instruction is long and appears somewhat involved, it is our opinion that appellants are in no position to complain for the reason that the instruction is more favorable to appellants than they were entitled to demand.

We conclude, therefore, that if within fifteen days from the date of this opinion, appellee will enter a remittitur in the amount of $7,500, the judgment for $12,500 will be affirmed, otherwise, it will be reversed, and the cause remanded for a new trial. It is so ordered.