## PHILLIPS v. KURN et al.

### No. 12862.

Circuit Court of Appeals, Eighth Circuit.

Dec. 14, 1944.

S. L. Richardson, of Walnut Ridge, Ark. (W. P. Smith, of Walnut Ridge, Ark., on the brief), for appellant.

E. L. Westbrooke, of Jonesboro, Ark. (E. G. Nahler, of St. Louis, Mo., and E. L. Westbrooke, Jr., of Jonesboro, Ark., on the brief), for appellees.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action commenced in a state court of Arkansas by the administrator of the estate of W. Phillips, deceased, and removed by the defendant trustees of the St. Louis-San Francisco Railway Company to the federal court. The plaintiff seeks to recover judgment for damages for the death of his intestate and for the destruction of a truck resulting from a collision of the truck and a fast train of the defendants at a crossing in the town of Hoxie, Arkansas.

Paved highway No. 67 runs north and south through the town of Hoxie. It is crossed at grade by defendants' tracks running east and west. The surrounding country is level. A second track at the crossing is on the north side of the main line. About 50 feet east of and parallel to the highway is the two-line track of the Missouri Pacific Railroad Company. Flasher lights comprising a wig-wag signal and designed to warn travelers on the highway of approaching trains by flashing red lights are located at opposite sides of the crossing. The one on the north side of the tracks was on the west side of the highway, and the one on the south side was on the east side of the highway. On the top of the poles supporting the lights are electric bells or gongs which ring when the lights flash. The lights are intended to begin flashing and the bells to begin ringing when a train reaches a point 1,800 feet from the crossing.

The defendants' station and other buildings are located south of the tracks and east of the highway. The buildings obstruct the view of a north-bound traveler on the highway from a point 171 feet south of the crossing until he approaches to within 25 to 30 feet of the railroad tracks. There were no obstructions to the view looking west from the highway.

The collision in which plaintiff's intestate was killed occurred between 12 and 1 o'clock on the afternoon of January 10, 1942. The day was cold and clear and the ground was covered with snow. The intestate, Phillips, with a companion, was traveling north in a truck on the highway at a speed estimated by witnesses to be from 15 to 25 miles per hour when struck by a fast troop train moving from east to west on the defendants' main line at a speed variously estimated at from 45 to 70 miles per hour. Both men were instantly killed and the truck was destroyed. At the time of the accident the cab door of the truck was closed and the glass was up. Phillips was traveling about 20 feet behind an automobile which passed over the tracks immediately in front of the approaching train. He did not stop before driving on the tracks, but one witness testified that he reduced his speed about 150 feet south of the track and others thought he again reduced the speed of the truck just before driving on to the tracks. When he came within 25 feet of the tracks one witness observed him look to the west, but not to the east in the direction from which the train was approaching. Had the intestate looked eastward when he came

within approximately 25 feet of the track he could have seen an approaching train at a distance of 1,000 feet, unless there were some obstruction, such as a truck or an automobile, temporarily in the way.

The plaintiff alleged that the injuries and damages complained of were due to the negligence of the defendants in three particulars, namely, (1) failure to give the statutory crossing signals by bell and whistle as the train approached the crossing; (2) operating the train at an excessive speed without giving any signals of the approach of the train; and (3) failure to maintain a flasher or other warning device in such manner as to give an effective warning to Phillips and his companion as they approached the crossing, thus inviting them to drive on the crossing. when it was dangerous to do so.

The answer denied negligence and alleged that the accident was the result of Phillips' contributory negligence in driving on the crossing, in that he neither stopped, looked, nor listened for the approaching train.

The case was tried to a jury. At the conclusion of the trial judgment was entered upon a verdict directed for the defendants, from which judgment the plaintiff appeals.

In a case of this character three rules of Arkansas law must be considered:

1. It is the duty of a traveler upon a highway, when approaching a railroad crossing, to look and listen before going upon the track, and to continue to do this until he has passed the point of danger. If a train is approaching it is his duty to stop because the train has the right of way. Missouri Pac. R. Co. v. Dennis, 205 Ark. 28, 166 S.W.2d 886; Louisiana & Arkansas Ry. Co. v. Smith, 8 Cir., 133 F.2d 436.

2. Section 11135 of Pope's Digest of the Statutes of Arkansas requires every railroad company to equip its locomotives with a bell or steam whistle and to ring the bell or sound the whistle at a distance of at least 80 rods from road and street crossings and to continue the ringing or the whistling until the locomotive shall have crossed such road or street under penalty of liability for all damages sustained by any person or persons by reason of neglect to do so.

3. Section 11153 of Pope's Digest, known as the Comparative Negligence Statute, provides that contributory negligence of a traveler at a road or street crossing bars recovery in an action against a railroad company for damages for negligence in running trains, provided such contributory negligence is equal to or greater than the negligence of the railroad company. In case, however, the negligence of the traveler on the highway "is of less degree" than the negligence of the railroad company, the damages recoverable must be in the proportion which the traveler's negligence bears to the negligence of the railroad company.

In view of the undisputed evidence the trial court was justified in holding plaintiff's intestate guilty of contributory negligence as a matter of law. He did not take the required precaution of looking to the east at a point where he could have seen the approaching train and could have stopped before entering the danger zone. Had he done so he could easily have avoided the collision. Missouri Pac. R. Co. v. Magness, 206 Ark. 1081, 178 S.W.2d 493, 495; Missouri Pac. R. Co. v. Walden, Ark., 181 S.W.2d 24, 25.

The defendants contend that there is no substantial evidence to support the alleged negligence of the railroad company. It is true numerous witnesses testified that the whistle was sounded almost continuously as the train approached from the distance of approximately a mile away; that the bell on the locomotive rang during the same time and until the train came to a stop a quarter of a mile west of the crossing; and that the flasher or wig-wag signals were in operation from the time when the train approached to within 1,800 feet of the crossing until after it had passed. It is also true that the evidence relating to the negligence of the defendants is comparatively meager and in large part negative in character. But its sufficiency must be tested by Arkansas law.

Witness Purdy testified on behalf of plaintiff that he was standing 60 to 65 feet southwesterly from the crossing when he heard the train coming. When the train was coming along the side of the depot building he looked toward the crossing and he saw no lights flashing and heard no bell ringing at the crossing; he thought he would have heard the bell if it had been ringing. He did not hear either a whistle blown or a bell rung on the locomotive of the train as it approached the crossing. He said, "I think I would have, I am sure I would have, if either signal had been given."

Rudy Robins was 500 or 600 feet east and north of the crossing at a lumber yard when the collision occurred. He heard the train running and the crash but did not hear the bell ring or the whistle sound, although he thinks he would have heard these signals had they been given.

Millard Songer was just south of the crossing when Phillips was killed. He heard the train coming. The flasher lights were not working; he does not remember whether the gong bell was ringing. The train was making lots of noise and he could not tell whether the bell rang. He heard the whistle away down about a mile away, and he would not have heard it if it had continued to blow because of the noise.

Raymond Whitsell was a short distance southwest of the crossing when the collision occurred. He could have seen the electric flasher and heard the gong at the crossing but he did not notice either one. He believes he would have heard the bell if it had been working. He heard the train whistle beyond the buildings but not in less than a quarter of a mile. He would not say the bell on the train was not ringing. He did not notice it.

■ That this evidence is substantial in character, requiring the question of defendants' negligence to be submitted to the jury, we think is determined by the decision of the Supreme Court of Arkansas in the recent case of Missouri Pac. R. Co. v. Rogers, 206 Ark. 1052, 178 S.W.2d 667, 669, decided March 13, 1944. The facts and the evidence in that case are comparable to the facts and evidence in the present case, and the issue was the alleged failure of the railroad company to ring a bell or blow a whistle or to give any warning of the train's approach to the crossing where the collision occurred. The contention was that the negative testimony of a witness that he did not hear any bell and that the whistle did not blow was not substantial. The Supreme Court said: "Many decisions of this court may be found declaring the rule to be, that where a witness, in possession of his faculties of hearing, was so situated that he would have heard signals had they been given, testifies that he heard no such signals, such testimony cannot be classed as negative in its character. Such testimony is treated as being affirmative testimony, tending to establish the fact that such signals were in fact not given, and is entitled to such weight as the jury sees fit to give it. Fort Smith & Western Ry.

Co. v. Messek, 96 Ark. 243, 131 S.W. 686, 966; Chicago, Rock Island & Pac. Ry. Co. v. Thomas, 184 Ark. 457, 42 S.W.2d 762, and cases therein cited; Missouri Pac. R. R. Co. v. Rogers, 184 Ark. 725, 43 S.W.2d 757, and cases therein cited."

■ Applying this rule to the testimony in the instant case, the alleged neglect of defendants' employees to ring the bell or to sound the whistle on the locomotive was a question for the jury. For the same reason, the questions of whether the flasher lights at the crossing were operating and whether the train was traveling at an excessive speed without proper warning of its approach being given should be submitted to the jury.

■ A serious contention of defendants in support of the ruling of the trial court in directing a verdict is that Phillips' failure to stop his truck before driving on the crossing and to look and listen for the approaching train was the proximate and sole cause of the collision and of his death, and that the alleged negligence of the employees of the railroad company in failing to give warning signals, if conceded, was not a factor in the cause of the collision. This contention is supported by numerous decisions of the Supreme Court of Arkansas, and it has been followed by this court in two cases. See Missouri Pac. R. Co. v. Dennis, Adm'r, 205 Ark. 28, 166 S.W.2d 886, and cases cited; and Louisiana & Arkansas R. Co. v. Smith, 8 Cir., 133 F.2d 436, and cases cited. It was admitted by counsel for plaintiff upon oral argument that the decision of the trial court in sustaining the motion for a directed verdict was correct, provided the cited cases relied upon by the defendants control. But plaintiff says those cases have in effect been overruled by subsequent decisions of the Supreme Court of Arkansas, and that under the more recent decisions of that court, even though the negligence of the driver of the vehicle involved in a collision be admitted, the case must be submitted to the jury under the comparative negligence statute, supra, where there is substantial evidence to support the alleged negligence of the railroad company. Plaintiff in support of this contention relies upon St. Louis-San Francisco Ry. Co. v. Beasley, 205 Ark. 688, 170 S.W.2d 667, decided April 19, 1943; Missouri Pac. R. Co. v. Magness, 206 Ark. 1081, 178 S.W.2d 493, decided March 13, 1944; and Missouri Pac. R. Co. v. Walden, Ark.,

181 S.W.2d 24, decided June 12, 1944. On this point we think plaintiff's contention must be sustained. We are unable to distinguish these recent cases from the instant case. In the Beasley case the court said [205 Ark. 688, 170 S.W.2d 669], "Willett [the driver of the truck involved in the collision] was undoubtedly guilty of contributory negligence * * *." But, the court proceeded, "under our statute, Section 11153, Pope's Digest, contributory negligence does not prevent a recovery against a railroad company where it is of less degree than the negligence of the company, and can only be considered in determining the amount of damages, that is, 'the amount of recovery shall be diminished in proportion to such contributory negligence.'" The court observed that in some of its previous decisions it had held as a matter of law that the contributory negligence of the plaintiff equalled or exceeded the negligence of the railroad company, and added, "* * * we think the jury had the right, under the facts here presented, to determine whether Willett's negligence was of less degree than that of appellants."

In the second case relied upon Magness recovered a judgment for damages for personal injuries received when an automobile which he was driving was struck at a crossing by a train of the appellant. The court said [206 Ark. 1081, 178 S.W.2d 495], "We * * * hold as a matter of law, that appellee was guilty of contributory negligence" for failure to look both ways until the point of danger was passed. The court then pointed out that under the comparative negligence statute of Arkansas, supra, contributory negligence is to be considered only in determining the measure of damages, that is, "the amount of recovery shall be diminished in proportion to such contributory negligence. * * * We cannot say, however, as a matter of law, that appellee's negligence equaled that of appellants."

In the Walden case, supra, the Supreme Court of Arkansas, also, held in a crossing case that the plaintiff was negligent as a matter of law for failure to stop and listen at a point where that action would have been effective before driving upon the railroad tracks. The court said [181 S.W.2d 25], "The judgment [in favor of plaintiff] will not, however, be reversed on that account, for the reason that there was testimony legally sufficient to support

the finding that the Railroad Company was also negligent", in that the testimony was conflicting as to whether the statutory warning signals were given as the train approached the crossing. And the court held that the trial court correctly submitted the case to the jury under the comparative negligence doctrine. See, also, Missouri Pac. R. Co. v. Rogers, 206 Ark. 1052, 178 S.W.2d 667.

These recent decisions of the Supreme Court of Arkansas are clearly contrary to the contention that in railroad crossing cases the established negligence of a traveler on the highway who fails to stop, look and listen before driving upon the tracks is the sole proximate cause of a collision with a passing train as a matter of law, where the evidence of the alleged negligence of the railroad company to give the statutory warning signals is conflicting. And until a jury has determined from the conflicting evidence that the defendant railroad company, as well as the injured person, was negligent, any comparison to determine the relative degree of their negligent acts would seem to be impossible.

The defendants argue that the Beasley, Magness and Walden cases, supra, are not controlling, for the reason that in a still more recent decision of the Supreme Court of Arkansas the rule of those cases has been abandoned and the rule of the Dennis and Smith cases has been reaffirmed. They rely upon the decision of the court in Kansas City Southern Ry. Co. v. Mickel, Ark., 183 S.W.2d 45. In that case the plaintiff was injured in a collision with a train at a crossing and sought to recover damages on the ground that he was injured as a result of the neglect of the engineer to keep a lookout as required by § 11144 of Pope's Digest. The case is distinguishable from the Beasley, Magness and Walden cases and from the present case, in that the evidence for the railroad company that a proper lookout was kept was not contradicted. The court held, therefore, that the burden of proof imposed by the statute upon the defendant company was discharged as a matter of law. In the cases relied upon here by the plaintiff the testimony in regard to negligence was conflicting. The Mickel case is not, therefore, in point.

For the foregoing reasons the judgment is reversed and the case remanded with instructions to grant a new trial.