SMITH, ADMINISTRATRIX, *v.* MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE.

4-7507                                      184 S. W. 2d 951

Opinion delivered January 22, 1945.

*E. W. Brockman,* for appellant.

*Henry Donham* and *E. W. Moorhead,* for appellee.

SMITH, J. Appellant, the widow of T. R. Smith, and the administratrix of the estate, sued appellee railway company for damages, on account of the alleged negligent killing of the intestate. A verdict was directed by the court in favor of the defendant railroad company, and from the judgment rendered upon that verdict is this appeal. We must, therefore, in reviewing this case, consider the testimony in the light most favorable to appellant.

The intestate's death was the result of a collision which occurred March 13, 1943, at 12:25 p.m., between a truck which he was driving and a local freight train, running on a straight and level track.

Intestate had purchased a yearling from Emmitt Warren, and, accompanied by a colored man, drove to Warren's home to get and put the yearling in his truck, which was equipped to carry livestock. The animal, at the time, was at large and intestate was told to return for it later.

Warren's residence is near the railroad track, and the east line of his yard fence is also the west line of the fence enclosing the railroad right-of-way. Warren maintains a cattle gap at the northeast corner of his yard, over which is a driveway running from the front of the residence to the railroad right-of-way, and thence at an angle of 45 degrees with the railroad tracks intersects the public road at a point about eight feet west of the tracks. It is 70 feet from the cattle gap to the west rail of the tracks on the crossing, which is constructed of five 4x10-inch boards, placed between the rails and one such board on the outside of each rail. When the yearling could not be

then delivered, intestate backed the truck out in front of the residence, turned the truck around facing the railroad tracks, and following the driveway across the cattle gap proceeded very slowly up the railroad dump, which was about four or five feet high. The train, a local freight, consisting of four cars and a caboose, coming from the south, struck the truck and carried it for about a quarter of a mile north of the crossing. Intestate sustained injuries from which he soon died. The colored man, who was seated by his side, was killed instantly.

There was affirmative testimony which, however, was not undisputed, to the effect that the whistle was not blown, nor was the bell rung, until after, or just as, the collision occurred. In the instructions directing the verdict in favor of the railroad company, the learned trial judge reviewed the testimony and announced the finding as a matter of law, that the negligence of the intestate was equal to, or greater than, that of the railroad company, and that therefore the doctrine of comparative negligence did not apply. That intestate was negligent, grossly so, in fact, is obvious, but that the railroad company was also negligent is a fact established by the testimony. Ordinarily, but not always, such testimony presents a situation in which the negligence should be compared.

We held in the recent case of *Mo. Pac. R. Co.* v. *King*, 200 Ark. 1066, 143 S. W. 2d 55, under the facts there stated, that under no reasonable view of the testimony could it be said that the negligence of the injured party was of less degree than that of the operatives of the train. We there said: "It is conceded that the testimony supports the finding that there was negligence on the part of the railroad company; but this negligence was not the proximate cause of the injury, and was of far less degree than that of appellee." But we there further said: "If a recovery may be sustained in this case, it would appear to follow that a recovery could be had in any case upon the showing that the negligence of the railroad company contributed in any degree to the injury; but this is not the law." We continued: "Negligence on the part of the railroad company, although it contributes to the

injury, does not alone suffice. It is essential that this negligence be of a greater degree than that of the person injured." In any case, as in that one, where no reasonable grounds for a difference of opinion existed, that the negligence of the injured party was equal to or greater than that of the operatives of the train, the court should direct a verdict in favor of the railroad company, although the railroad company was not free from negligence, but if there is room for an honest and intelligent difference of opinion, the jury should be permitted to compare the negligence and should be given an instruction like the one approved in the recent case of *Mo. Pac. R. Co.* v. *Walden,* 207 Ark. 437, 181 S. W. 2d 24, which would require the damages to be reduced in the proportion which the negligence of the injured party bore to the negligence of the railroad company. In the King case, *supra,* from which we quoted, the opinion recites that appellee (the injured party) heard the whistle of the train and, without looking to see where the train was, he assumed that it was switching at a lumber yard 1,103 feet from the place of injury. Here the whistle was not blown, nor was the bell rung. The approaching train, of course, made considerable noise which the intestate could have heard had he listened, just as he could have seen the train had he looked, but the statute imposes upon all railroads the duty of giving notice of the approach of a train to a crossing by blowing the whistle or ringing the bell ". . . at a distance of at least eighty rods from the place where the said road shall cross any other road or street." Section 11135, Pope's Digest.

The fireman testified that he saw the truck just before striking it, but not in time to avoid striking it, and that the truck was approaching the track at a speed of about one, but not more than two, miles per hour. A note of the bell, or a blast of the whistle would have given intestate the warning which the statute requires, and might have awakened him from his lethargy and averted the collision inasmuch as he was approaching the track not directly but at an angle of 45 degrees, which to that extent diminished the range of his vision, and while this

did not lessen his duty to look, it did make looking less effective.

We do not review the numerous crossing cases cited by opposing counsel, in some of which we held that the negligence of the traveler was equal to or greater than that of the railroad company, while in others it was held that a case had been made for the jury to compare the negligence of the parties, as each case must turn upon the conditions shown by the testimony.

For the error of the court in holding as a matter of law that the negligence of the intestate was equal to or greater than that of the railroad company, the judgment must be reversed and the cause remanded for the submission of that question to the jury.

McHANEY, J., dissents.