SHERMAN, ADM'X *v.* Mo. PAC. R.R. Co.

5-3307                                                    383 S. W. 2d 881

Opinion delivered October 26, 1964.

[Rehearing denied December 7, 1964.]

*F. C. Crow,* for appellant.

*William J. Smith and William H. Sutton,* for appellee.

SAM ROBINSON, Associate Justice. There was a collision at a grade crossing between a railroad train and a pickup truck. Two men, occupants of the truck, one the driver, the other a guest or passenger, were killed. The administratrix of their estates filed suits joining the railroad company and the engineer, C. D. Haver, as defendants. The cases were consolidated and tried. After both sides had rested, the trial court directed verdicts for the defendants. The administratrix has appealed, and the issue is whether the court erred in directing the verdicts.

About 7:30 a.m. on the morning of March 1, 1963, Ernest Albert McDade and Fred Joe McDade, brothers, were in a pickup truck travelling east on a blacktop highway on the outskirts of Camden. A Missouri Pacific freight train consisting of four diesel units, 40 empty boxcars, and 26 cars loaded with ordinary freight, was travelling north on the main line of the Missouri Pacific tracks. The train, after having stopped in Camden, had traveled about one mile when the collision occurred. Both the train and the truck were going 20-25 miles per hour. Ernest Albert McDade, driver of the truck, made no effort to stop or avoid the collision. It is obvious that he never saw the train, although for the last 150 feet the truck traveled before reaching the railroad track there was nothing to obstruct his view of the train. It was broad daylight.

The engineer, fireman and brakeman on the train were in the cab of the lead engine, located at the front thereof. They all saw the truck just as soon as it could be seen, at a time when both the train and the truck were about 150 feet from the crossing. The trainmen testified that when they first saw the truck the train whistle had not been blown because of a city ordinance prohibiting the blowing of a train whistle in Camden, except in an emergency; appellant makes no point regarding the validity of the ordinance.

The trainmen testified that the bell, which is operated electrically, was ringing; that it had been turned on when the train pulled out of Camden and had not been

turned off. The engineer testified that notwithstanding the city ordinance it was his practice to blow the whistle or horn when he saw anyone approaching a crossing that was also being approached by the train; that he assumed the driver of the truck would stop for the train. He had the right to make this assumption. *Crossett Lumber Co.* v. *Cater,* 201 Ark. 432, 144 S. W. 2d 1074. There the court said: ''The operatives of trains have the right to assume that a traveler or a pedestrian approaching a railroad track will act in response to the dictates of ordinary prudence and the instinct of self-preservation, and will, in fact, stop before placing himself in peril, and the duty of the railroad employees to take precautions begins only when it becomes apparent that the traveler at a crossing will not do so.''

The engineer further testified that when the train got to within 75-80 feet of the crossing it appeared that the truck was not going to stop; that he, therefore, blew the distress signal and applied the brakes, but that the brakes did not slow the train in the distance of 75 feet to the crossing; that the train struck the truck broadside at the crossing and carried it on the front of the engine 4/10 of a mile, the distance it took the train to stop. He further testified that he stopped the train just as soon as it could be stopped after he applied the brakes, 75-80 feet before reaching the crossing.

It is clear from the evidence that the driver of the truck was negligent in not looking to see if a train was approaching the crossing. The train and truck reached the crossing at approximately the same moment. If the truck driver had only looked to his right he could not have failed to see an object as big as a railroad engine. The train was bound to have been making considerable noise. The court judicially knows this to be a fact. *Kansas City Southern Ry.* v. *Baker,* 233 Ark. 610, 346 S. W. 2d 215; *Missouri Pacific R. Co.* v. *Doyle,* 203 Ark. 1111, 160 S. W. 2d 856.

But even though it is shown conclusively that the driver of the truck was negligent, there is still the question of whether the court was correct in directing verdicts

in favor of the defendants. Notwithstanding the fact that the truck driver was negligent, he is entitled to recover if his negligence was of less degree than the negligence of the defendants. Ark. Stat. Ann. § 73-1002 (Supp. 1963.)

The question we have to decide is whether it can be said, as a matter of law, that the truck driver's negligence is greater than that of the trainmen when the evidence is viewed as we must view it, in the light most favorable to the ones against whom the verdicts were directed. *Powell* v. *Jonesboro, L. C. & E. R. Co.,* 166 Ark. 252, 266 S. W. 78.

Appellees introduced weighty evidence that not only was the truck driver negligent, but that there was no negligence on the part of the defendants. If, however, there is any substantial evidence to support a verdict for the party against whom a directed verdict is sought, it is the duty of the trial court to let the case go to the jury, and this is true although later on it might be within the prerogative of the trial court to set the verdict aside as being contrary to the preponderance of the evidence. *Little Rock & Ft. Smith Ry. Co.* v. *Henson,* 39 Ark. 413; *Jones* v. *Lewis,* 89 Ark. 368, 117 S. W. 561. Mr. Justice Hart said in *St. Louis S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215: "Under the provision of the Constitution that "judges shall not charge juries with regard to matters of fact but shall declare the law,' it has been repeatedly held that the circuit court has no power to determine the facts of the case and direct a verdict for either party, even though if returned for the opposite party it would set it aside as against the weight of the evidence."

We have cases with facts similar to the facts in the case at bar where it has been held that it was the duty of the trial court to direct a verdict for the defendant, such as *Missouri Pacific Rd. Co.* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785; *Missouri Pac. Rd. Co., Thompson, Trustee* v. *King,* 200 Ark. 1066, 143 S. W. 2d 55; *Lloyd Adm'x* v. *St. Louis S. W. Ry. Co.,* 207 Ark. 154, 179 S. W. 2d 651.

On the other hand, we have cases in point where it was held that the trial court properly submitted the issues to the jury. *Powell* v. *Jonesboro, L. C. & E. Ry. Co.*, 166 Ark. 252, 266 S. W. 78; *St. Louis-San Francisco Ry. Co.* v. *Horn*, 168 Ark. 191, 269 S. W. 576; *Missouri Pac. Rd. Co.* v. *Rogers*, 206 Ark. 1052, 178 S. W. 2d 667; *Missouri Pac. Rd. Co., Thompson, Trustee* v. *Magness*, 206 Ark. 1081, 178 S. W. 2d 493; *Missouri Pac. R. Co.* v. *Walden*, 207 Ark. 437, 181 S. W. 2d 24. See also *Phillips* v. *Kurn*, 145 F. 2d 908.

Some of our former decisions regarding degree of negligence appear to be in irreconcilable conflict, but upon close examination it will be seen that there is some distinction in the facts on which the decisions are rendered. The sum and substance of our holding is, and has been, that each case must stand on its own facts. We said in *St. Louis-San Francisco Ry. Co.* v. *Horn*, supra,: "Each case must, of course, be considered upon its own peculiar facts, and the legal sufficiency of the evidence on the question of degree of negligence must be tested, the same as in other cases, by the state of the testimony presented in a given case."

We believe the evidence in the case at bar was sufficient to take the case to the jury. The witness, Mrs. Freeman, testified that she did not hear the whistle or bell, although she was in a good position to have heard either if it had been sounded, and there is an inference from her testimony that the light maintained at the crossing by the railroad company to warn travelers on the highway of approaching trains was not burning. Moreover, the witness Charles Stinett, who was nearby, did not hear the bell, and there is testimony of the fireman that although the train is equipped in a manner that he could apply the emergency brakes, he did not do so. Our attention has not been called to any testimony that the engineer applied the emergency brakes; if there is evidence in the record to that effect we have failed to discover it. True, the engineer stated that he applied the brakes, but it is not clear that he applied the *emergency* brakes, and the fact remains that although the

train was going at a speed of only about 20-25 miles per hour it took it 4/10 of a mile to stop. The engineer testified that the train could not be stopped any sooner, but it must be remembered that he is a party to the litigation.

The witness Delmer Paul Parrish, a police officer, testified that immediately following the wreck he heard the engineer state that if he had applied his brakes all at once he would have derailed the train, and John W. Daniell, another police officer of the City of Camden, testified that he heard the engineer state that he was afraid to apply his emergency equipment because he would scorch the track and derail the train. If the speed of the train had been slowed just a little the truck may have cleared the tracks without being struck.

Reversed and remanded.

WARD, J., dissents.

PAUL WARD, Associate Justice (dissenting). In my opinion the majority has wholly failed to recognize the real issue involved on this appeal.

The issue is *not* whether there is substantial evidence to show negligence on the part of the railroad company. The real issue is whether there is substantial evidence to show the driver's negligence was of a less degree than that of the railroad company. See: *Missouri Pacific Railroad Company* v. *Davis,* 197 Ark. 830, 125 S. W. 2d 785; and *Missouri Pacific Railroad Company* v. *Price,* 199 Ark. 346, 133 S. W. 2d 645. In the *Davis* case there was (as here) evidence of negligence on the part of the driver and the railway company. Appellees were severely injured at a railway crossing. When they were within 100 feet of the crossing they could have seen the train as it approached. They testified that the whistle was not blowing and the bell did not ring until just before the collision, and they were corroborated by two other people. This was disputed by the engineer who stated he blew the whistle and rang the bell, and that he applied the emergency brake which caused one wheel of the engine to run off the track. This Court in summing up

the testimony said "it must be assumed that no signals were given by appellant." The case was allowed to go to the jury which rendered a judgment in favor of appellees. On appeal this Court reversed the lower court and dismissed appellees' causes of action, using this language:

"We have, therefore, a case in which it appears that the jury found that there was negligence on the part of the railroad company in the failure to give warning of the approach of the train to the crossing; but it appears to be utterly unreasonable to say that this negligence was comparable to that of the plaintiff, or that the jury was warranted in finding that the plaintiff's negligence was of less degree than that of the railroad company.

\*   \*   \*   \*

"Under these circumstances, it is not merely to split hairs, it is to trifle with the testimony, to say that the jury was warranted in finding that the negligence of the plaintiffs was of less degree than that of the railroad company. In our opinion, the trial court should have told the jury, as a matter of law, that the negligence of the plaintiffs was not of less degree than that of the railroad company."

In the *Price* case the facts and the issue were similar to those in the *Davis* case. Price was seriously injured as he attempted to cross in front of a train at night— he testified that he looked and listened until he was close to the crossing, but he heard no signals and saw no head light. His testimony was corroborated by other witnesses. Again, there was testimony of negligence on the part of both the driver and the railroad company. The matter was submitted to a jury which returned a verdict in favor of appellee for $20,000. This Court, in commenting on the testimony, said:

". . . we must assume that the bell was not being rung; that the whistle was not blown; that the flash light system (through some mysterious caprice of mechanics) had suspended operation; that the engine headlight was dim; that appellee slowed to a speed of 15 or 20 miles

an hour as he crossed the tracks; that he looked and listened, and did not see a train nor hear a signal, and that, having thus reassured himself, he proceeded upon the track at the very instant a passenger engine (which the undisputed evidence shows was not traveling more than 20 miles per hour) engaged the crossing."

This Court reversed the judgment of the trial court and dismissed appellee's cause of action using the language set out below:

"To say in the instant case that appellee's negligence was not, as a matter of law, equal to or greater than that of appellants would be to disregard human experiences and known factors of physical operations, and this we cannot do. Of course, comparative negligence is a matter of jury determination, *but there must be substantial evidence to sustain a verdict that a defendant's negligence was of a higher degree than that of the plaintiff, and such evidence is lacking in the case before us.*" (Emphasis added.)

The majority opinion does not even recognize much less pass on the issue so clearly defined in the two cases just discussed. Also, as previously pointed out, the issue is one for us and not the jury to pass on in the first instance.

I would therefore affirm the judgment of the trial court.